**David M. SHIELDS, Appellant,**

v.

**The STATE of Texas, Appellee.**

Nos. 10–89–284–CR, 10–89–285–CR.

Court of Appeals of Texas,
Waco.

June 20, 1991.

**832**

El–Hadi T. Shabazz, Waco, for appellant.

John W. Segrest, Crim. Dist. Atty., Tanya S. Dohoney, Juanita Fielden, Asst. Dist. Attys., Waco, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

THOMAS, Chief Justice.

This opinion discusses the procedure for a *Batson* hearing. *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Appellant, who is black, contends the State used a peremptory challenge in a racially discriminatory manner to strike a Hispanic juror from the jury which convicted him of evading arrest and criminal trespass. *See Powers v. Ohio,* — U.S. ——, 111 S.Ct. 1364, 1366, 113 L.Ed.2d 411 (1991). The convictions are affirmed because the defense failed to offer *evidence* of relevant facts which tended to show the challenge was racially motivated. *See* TEX. CODE CRIM.PROC.ANN. art. 35.261(a) (Vernon 1989).

### THE *BATSON* HEARING

■ The procedural and evidentiary aspects of the *Batson* hearing are occasionally misunderstood. It is an "evidentiary hearing" with the judge serving as the "fact-finder." *Tompkins v. State,* 774 S.W.2d 195, 201–02 (Tex.Crim.App.1987). It is an "adversary proceeding" with clearly identified burdens. *Keeton v. State,* 749 S.W.2d 861, 871 n. 1 (Tex.Crim.App.1988) (Teague, J., concurring). Thus, the usual procedural and evidentiary rules apply.

■ The defendant has an initial "burden of production" and the ultimate "burden of persuasion." *Williams v. State,* 804 S.W.2d 95, 97 (Tex.Crim.App.1991); TEX.CODE CRIM.PROC.ANN. art. 35.261(a) (Vernon 1989). These burdens are evidentiary, which means the defendant must produce *evidence* to sustain them. Initially, the defendant must produce evidence sufficient to establish a prima facie case that the state has engaged in purposeful racial discrimination through the use of its peremptory challenges. *Batson,* 106 S.Ct. at 1723. A prima facie case is the "minimum quantum of evidence" necessary to support the rational inference that the state has used one or more of its peremptory strikes in a racially discriminatory manner. *Tompkins,* 774 S.W.2d at 201. The trial court must initially decide whether the de-

fendant has made a prima facie showing. *Williams,* 804 S.W.2d at 106.

Once a prima facie case is established, "then, and only then," does the burden shift to the state to offer a neutral explanation for each of its strikes against jurors of a cognizable racial group. *Batson,* 106 S.Ct. at 1723; *Tompkins,* 774 S.W.2d at 200–01; TEX.CODE CRIM.PROC.ANN. art. 35.-261(a) (Vernon 1989). No case law or statute requires the prosecutor to give a neutral explanation under oath. Accordingly, the neutral explanation must appear in the record but not necessarily in the form of "evidence." The state may, of course, offer evidence in support of the explanations for its strikes.

■ Retaining the ultimate burden of persuasion on the question of purposeful discrimination, the defendant *may* offer additional evidence to rebut the state's explanations. TEX.CODE CRIM.PROC.ANN. art. 35.-261(a) (Vernon 1989).

■ At the conclusion of the hearing, the court must determine whether the state gave a racially neutral explanation for each of the questioned strikes and, if so, whether each explanation was truly race-neutral or merely a pretext for a racially motivated strike. *Williams,* 804 S.W.2d at 106. The court may consider the presence or absence of any of the factors listed in *Whitsey* in deciding whether the explanations offered by the state were pretexts. *Id.; Whitsey v. State,* 796 S.W.2d 707, 713–14 (Tex.Crim. App.1990). The preferred practice is for the court to support its rulings by written findings and conclusions. The court's determination will not be disturbed on appeal unless it is "clearly erroneous." *Whitsey,* 796 S.W.2d at 726 (on rehearing).

■ As in any appeal, the court of appeals is bound by the record when reviewing a *Batson* point. *See Haner v. State,* 170 Tex.Crim. 68, 339 S.W.2d 212, 214 (1960) (on rehearing). Therefore, what constitutes the "record on appeal" is a question of critical importance, especially to the defendant who is responsible for providing an appellate record sufficient to demonstrate reversible error. TEX.R.APP.P.

50(d); *Keeton,* 749 S.W.2d at 871 n. 1 (Teague, J., concurring). Only certain documents are properly included in the transcript. TEX.R.APP.P. 51(a). Consequently, just because a document appears in the transcript does not automatically mean that it can be considered a part of the record on appeal. *E.g., Jones v. State,* 116 Tex.Crim. 88, 32 S.W.2d 464 (1930) (holding that trial judge's ex parte affidavit could not be considered part of the record on appeal). Documents such as the list of prospective jurors, their personal profile cards, the parties' "strike lists," and the prosecutor's voir dire notes are not part of the transcript. *See Prosper v. State,* 788 S.W.2d 625, 627 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd). Therefore, even if these documents are filed with the clerk and included in the transcript, the appellate court still cannot consider them. *Jones,* 32 S.W.2d at 464. However, they become a part of the record when admitted as exhibits at the hearing, thereby making them a part of the statement of facts. TEX. R.APP.P. 50(a).

Everything in the statement of facts is not *evidence.* Unsworn comments by counsel, although reflected by the statement of facts, are not evidence. *Prosper,* 788 S.W.2d at 626–27 n. 1. Consequently, unsworn recitations of what occurred during voir dire and jury selection or of jurors' personal characteristics are not evidence. For example, facts necessary to show the existence or absence of disparate treatment (showing that the prosecution did or did not strike jurors with characteristics similar to the challenged juror) cannot be merely recited into the record as evidence through unsworn statements. *Id.* at 626. Counsel who want "the record to reflect" certain facts must include those facts in the record as evidence either by sworn testimony, exhibits, stipulations, admissions or judicial notice. Because they have been sworn before voir dire, jurors' responses to questioning do constitute evidence. However, counsel often forego questioning jurors about information reflected on the profile cards, relying instead on the cards to reflect that information "for the record."

■ Unless reflected by the *evidence*, an appellate court does not judicially "know" where jurors were seated on the venire, which jurors were peremptorily struck by the parties, jurors' ethnicity, ages, occupations, styles of dress, religious preferences, or a myriad of other factors which may support or negate a charge that the state has used its peremptory challenges in a racially discriminatory manner. The most elaborately constructed, fact-based argument on appeal is for naught unless it is supported by *evidence* in the record.

### THIS PARTICULAR *BATSON* HEARING

The following occurred after the completion of voir dire:

THE COURT: The State has struck ... Numbers 3, 5 and 10. Is that correct?

[PROSECUTOR]: Yes, your Honor.

THE COURT: The defendant strikes 4, 10 and 11.

. . . . .

[APPELLANT'S COUNSEL]: May it please the Court, juror number 5, which was struck by the State, Robert Diaz, we would request that the record reflect that Mr. Diaz is a member of [the] Hispanic race.

THE COURT: Does the State have any objection to [the record reflecting] that? ...

[PROSECUTOR]: No.

. . . . .

[APPELLANT'S COUNSEL]: Your Honor, at this time the defendant would move to strike and quash the jury ... on the basis of the case of Batson versus Kentucky ... on the grounds that the State of Texas has struck the only member of an identifiable minority race on the jury panel from which a jury can be chosen. And such—without a neutral reason stated by the State and given by the State, such constitutes discrimination and constitutes a violation of my client's right to due process and equal protection under the law.

THE COURT: All right. First of all, before we proceed, for purposes of clarifying the record, you earlier in this trial asked me to have the record reflect that everybody on the panel were of the white race. I assume that you want to amend that[?]

[APPELLANT'S COUNSEL]: I was in error there, your Honor. I meant to say of non-black, but—

THE COURT: Okay. ... Does the State have any response to the Motion?

At this point the prosecutor indicated that the State had neutral reasons for striking the Hispanic juror but argued that the reasons did not have to be stated because the defense had not made a "proper Batson challenge." However, after the court inquired about the reasons, the prosecutor gave this explanation for the strike:

Your Honor, the reason that—reasons that we struck [the Hispanic juror] is that he is a blue collar worker, basically, approximately 38 years old, which is the approximate age of [Appellant]. He has been employed there for a short length of time. Basically, that we just do not feel that because of his blue collar background and [Appellant's] blue collar background, that there might be some kind of sympathy or prejudice, bias toward [Appellant] in that matter.

Appellant's counsel then responded with these unsworn comments:

Your Honor, in response to those, first to take race. I'd like the record to reflect that Number One, Patricia Rose is 32 years of age, Number two, Delta A. Coulter is 32 years of age, Julie Trimble is 33 years of age, Peggy Dobecka is 36 years of age. That reaches all that we could have reached, but Gerald J. Barak is 33 years of age. All are very close in age to [Appellant].

Further, with regard to blue collar worker, depending on what that definition actually means, Patricia Rose is a secretary for the City of Waco; also falls in the age bracket; was not struck by the State.

Mr. T.M. Parsons was a cabinet maker. He is retired, does not meet the age deal, but he is definitely a blue collar worker.

Mr. Charles Sells is a maintenance mechanic, blue collar worker, was not struck by the State.

Elvira Potts, seamstress at Fab–Knit, blue collar worker, and I don't believe he was struck by the State.

Peggy Dobecka is a clerk-typist, blue collar worker, not struck by the State.

Gerald J. Barak, Jr. is a stockroom clerk, a blue collar worker, not struck by the State.

We do not feel that in light of the similarities and the non-striking of the other persons by the State which meet the ... "neutral" test under a recent decision of the Texas Court of Criminal Appeals, that those neutral [reasons], in light of the total facts and backgrounds of the panel as a whole and the similarities between the panel as a whole and the complained of juror which was struck does not—makes the neutral reasons given by the State not neutral at all. And we would still request the panel to be struck.

THE COURT: Does the State have any response?

[PROSECUTOR]: No, your Honor....

THE COURT: ... I overrule the motion.

■ The statement of facts does not contain as exhibits either the list of prospective jurors or their profile cards. Although the record contains evidence, by virtue of the prosecutor's stipulation, that the State used a peremptory strike against a Hispanic juror, the prosecutor did not stipulate or admit that defense counsel's unsworn comments about certain jurors' ages and occupations were true. None of the information recited by defense counsel is reflected by the voir dire. As already noted, these unsworn comments were not evidence of the jurors' personal characteristics. *See Prosper*, 788 S.W.2d at 626 n. 1. Thus, the record does not contain any evidence of disparate treatment based on a comparison of juror characteristics.

Considering the totality of the circumstances in the light most favorable to the ruling denying the *Batson* motion, the ruling was not clearly erroneous because it is supported by the record and stands unimpeached by Appellant's proof. *See Whitsey*, 796 S.W.2d at 723 (on rehearing).

Appellant also complains under point one that the entire venire should have been quashed, but he has not briefed or argued this contention. Accordingly, nothing is presented for review. *See* TEX.R.APP.P. 74(f). Point one is overruled.

## OTHER POINTS

■ Appellant, a student residing on the Texas State Technical Institute campus in Waco, received an eviction notice to vacate campus housing sent by T.S.T.I. personnel. A copy of the notice was introduced into evidence over Appellant's objection that a proper predicate had not been laid. Point two is that the notice was not admissible because it was not supported by an affidavit.

■ A record of regularly conducted activity is admissible as an exception to the hearsay rule if it is supported by the testimony of the record's custodian, other qualified witness or an affidavit. TEX.R.CRIM. EVID. 803(6). T.S.T.I.'s housing advisor was the sponsoring witness for the exhibit. Appellant's argument, that an affidavit was necessary to support the record's admission, is without merit because the exhibit was supported by the testimony of a qualified witness. Point two is overruled.

■ During the trial, a prosecutor met in the hallway with three witnesses at the same time. Appellant asked for a mistrial on the ground that the discussion involved testimony in violation of "the rule." [1] After the court denied the motion, Appellant

---

1. "The rule" provides in part: "At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses...." TEX.R.CRIM.EVID. 613. When placed under the rule, witnesses "shall be instructed by the court that they are not to converse with each other or with any other person about the case, except by permission of the court...." TEX.CODE CRIM.PROC.ANN. art. 36.06 (Vernon 1981).

made the following bill of exceptions based on the testimony of the three witnesses:

[APPELLANT'S ATTORNEY]: Ms. Fletcher, just recently out in the hall, you were standing beside the two officers talking to [a prosecutor]. What were y'all discussing out there?

A Where I was when the police call came for the officers to respond to be at 31–3.

Q And were the other—were those two officers standing there and could hear your discussion with [the Prosecutor]?

A I believe so. I'm not sure if Officer Ruiz was or not.

Q At least one of them was?

A Yes, sir. I'm not sure if he was paying attention to me, though. I'm really not.

Q Did you discuss anything else?

A No, sir.

Q Okay. Did you overhear any conversation between [the Prosecutor] and the other two officers regarding any questions he may have asked them, or they asked him, or anything they may have said about the case?

A No, sir.

.    .    .    .    .

Q Mr. Ruiz, at this last break, you were beside another TSTI officer and Ms. Fletcher outside in the hall, while—and y'all were discussing something with [the Prosecutor]. Is that correct?

A That's correct.

Q What were y'all discussing? What was said out there?

A We were discussing—I can't remember. We discussed a few things. Oh, about the dispatching—we were dispatched on the call. Basically, that was it.

Q Anything else?

A No.

Q It deals with this case. Is that correct?

A That's correct.

Q Whose testimony were you discussing?

A Nobody's in particular that I can remember.

.    .    .    .    .

Q Mr. Ruiz, have you discussed anything that happened that night with anyone since Court convened this afternoon at 1:30 other than one of the prosecutors or myself?

A Just my sergeant, Sergeant Florez.

Q You discussed—you've discussed what happened that night with Sergeant Florez?

A We've just gone over some of the case report.

Q Okay. What did y'all talk about?

A Basically just what, you know, what happened.

Q Everything that happened?

A Well, from—just from the time that we got there, just our involvement.

.    .    .    .    .

Q Sergeant Florez, at the most recent break, you were standing by the other officer and Ms. Fletcher and [the Prosecutor], and y'all were discussing something. Could you tell us what those discussions were about?

.    .    .    .    .

A Well, I was—Officer Ruiz and I were discussing the time that we would have to be here in the morning, if we were called, because tomorrow's his day off, and I was kidding about him, that he had to be here if we had to be called.

Q Did y'all discuss anything about the case?

A No he and I, we did not.

Q Did you overhear anyone else—

A I overheard some conversation, but I wasn't paying any specific attention with what was being said.

Q Did you have a conversation with Officer Ruiz going over what happened that evening, since Court convened at 1:30 this afternoon.

A Prior to coming here, sir? Yes, I reviewed the case with him. I picked him up at his residence, because we were supposed to report for duty at three

o'clock this evening. And, yes, sir, we went over the case.

Q After 1:30 this afternoon, here in the courthouse?

A No, sir, prior to arriving here.

. . . . .

THE COURT: [To Officer Ruiz] Is it your testimony you [discussed the case] upon entering the courthouse today? When we began the trial, everybody stood up over here and I swore everybody in and the rule was invoked. Do you remember that?

THE WITNESS: Yes, sir.

THE COURT: And that was about 1:45 this afternoon.

THE WITNESS: Yes, sir.

THE COURT: Have y'all discussed anything since that time?

THE WITNESS: No, sir. We—we did discuss it when we arrived. We arrived early and went down, took a break in some of the offices downstairs, and we did go over it in here in the courthouse, I guess you might say, to refresh ourselves.

Point three is that the court erred when it denied Appellant's motion for a mistrial.

Although the discussion between the three witnesses regarding the dispatch violated the rule, not every violation results in reversible error. *See Hougham v. State,* 659 S.W.2d 410, 413 (Tex.Crim.App.1983). Rather, the question is whether the court abused its discretion by allowing a witness who violated the rule to testify. *Archer v. State,* 703 S.W.2d 664, 666 (Tex.Crim.App. 1986). Two questions are material in determining whether the court abused its discretion. First, did the witness hear testimony or confer with another witness? Second, did the witness hear testimony or confer about a material issue bearing on the defendant's guilt or innocence. *Id.* at 666–67.

Both Fletcher and Ruiz admitted discussing in the hall the dispatch they received on the night of the offenses. However, the time and manner of the dispatch were not material issues bearing on Appellant's guilt or innocence. Therefore, the court did not abuse its discretion when it denied Appel-

lant's motion for a mistrial and allowed Fletcher, Ruiz, and Florez to testify. Point three is overruled.

The judgments are affirmed.