Lee Arthur YOUNG, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–89–00571–CR.

Court of Appeals of Texas,
Dallas.

Dec. 28, 1992.

Discretionary Review Refused
June 16, 1993.

Rober T. Rogers, Dallas, for appellant.

Sharon Batjer, Dallas, for appellee.

Before ENOCH, C.J., and BAKER and ONION [1], JJ.

## OPINION ON REMAND

BAKER, Justice.

On original submission, we held the evidence sufficient to support the verdict and that the trial court did not err in overruling appellant's *Batson* [2] motion. *See Young v. State*, No. 05–89–00571–CR (Tex.App.— Dallas, March 5, 1990) (not designated for publication), *rev'd*, 826 S.W.2d 141 (Tex. Crim.App.1991). We stated:

In his brief, appellant brings forth testimony from the voir dire which he asserts casts doubt on the prosecutor's explanations. Appellant urges that we compare the individuals that the State struck with those who were not struck and to use these alleged discrepancies to determine whether the State's explanations were credible. Because appellant did not urge the trial court to make the comparisons during the *Batson* hearing, they are not available on appellant's behalf for consideration by a reviewing court.

*Young*, slip op. at 7. In reaching this conclusion, we relied on *Tompkins v. State*, 774 S.W.2d 195, 202 n. 6A (Tex.Crim. App.1987), *aff'd by an equally divided court*, 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989). In *Tompkins*, the court of criminal appeals stated:

Because the trial judge was not urged to make, and did not make, a finding based upon a comparison analysis in deciding the issue whether the prosecutors' neutral explanations were rebutted or impeached at the *"Batson"* hearing with

evidence that unchallenged white veniremen also possessed the same purportedly undesireable [sic] characteristics, we do not consider this circumstance in reviewing the trial judge's findings in this cause.

*Tompkins*, 774 S.W.2d at 202 n. 6A.

On discretionary review, the court of criminal appeals agreed with appellant that the footnote in *Tompkins* was not a holding and declined to adopt it as one. *See Young*, 826 S.W.2d at 144.[3] The court of criminal appeals concluded that this Court erred by refusing to consider appellant's comparisons in reviewing the trial court's *Batson* ruling. *See Vargas v. State*, 838 S.W.2d 552, 557 (Tex.Crim.App.1992). The court of criminal appeals remanded the case to our Court not to determine whether the prosecutor's explanations were credible, but to determine whether the record supports the trial judge's ruling on appellant's *Batson* motion and was therefore not clearly erroneous. *See Young*, 826 S.W.2d at 146–47.

Upon remand of the cause to this Court, we advised appellant and the State of their right to rebrief the issue. *See Robinson v. State*, 790 S.W.2d 334, 335 (Tex.Crim.App. 1990) (per curiam). Both appellant and the State filed briefs on remand. Appellant did not request oral argument. The State requested argument only if appellant requested oral argument. We submit the case on the briefs on remand. We proceed to determine whether the record supports the trial court's ruling on appellant's *Batson* motion and was therefore not clearly erroneous.

After reviewing the record, we find that the record does not support the trial court's ruling on juror number eleven, Mr. Jones. We conclude that the trial court made a mistake. We reverse the trial court's judgment. We remand the cause for a new trial.

1. The Honorable John F. Onion, Jr., Presiding Judge, Court of Criminal Appeals, Retired, sitting by assignment.

2. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

3. In a footnote, the majority opinion stated it regarded the *Tompkins* footnote as dictum. *See Young*, 826 S.W.2d at 144 n. 5; *see also Young*, 826 S.W.2d at 153 n. 3. (Benavides, J., dissenting).

## STANDARD OF REVIEW

■ The standard of review for claims that the State used peremptory strikes in a racially discriminatory manner is the "clearly erroneous" standard. *Hill v. State*, 827 S.W.2d 860, 865 (Tex.Crim.App. 1992); *Williams v. State*, 804 S.W.2d 95, 101 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991). To determine whether the fact finder's decision is clearly erroneous, we look to the record to see if the record leaves us with the definite and firm conviction that the trial court made a mistake. *Hill*, 827 S.W.2d at 865; *Whitsey v. State*, 796 S.W.2d 707, 728 (Tex.Crim.App.1989) (op. on reh'g).

■ The clearly erroneous standard accords great deference to the trial court's findings and conclusions because the trial court bases its rulings in part upon a credibility determination that is not reviewable by the appellate court. *Young*, 826 S.W.2d at 152 (op. on reh'g). We review the evidence in the light most favorable to the trial court's ruling. *Robinson v. State*, No. 69,568, slip op. at 11, 1991 WL 57765 (Tex.Crim.App. April 17, 1991) (reh'g granted); *Whitsey*, 796 S.W.2d at 721.

■ The exercise of even one peremptory challenge for racial reasons invalidates the entire jury selection and mandates a new trial. *See Linscomb v. State*, 829 S.W.2d 164, 166 (Tex.Crim.App.1992); *Keeton v. State*, 724 S.W.2d 58, 65 n. 5 (Tex. Crim.App.1987). The aggrieved party need not show multiple instances of racial prejudice in jury selection to prove a constitutional violation. *Linscomb*, 829 S.W.2d at 166.

■ Under *Batson*, we should be occupied with the question of whether the State was racially motivated in the exercise of its peremptory challenges against even one juror of discernable race. *Linscomb*, 829 S.W.2d at 167. We examine each of the prosecutor's neutral explanations to determine if they are a pretext for a racially motivated peremptory challenge. *Whitsey*, 796 S.W.2d at 713.

## COMPARATIVE ANALYSIS— DISPARATE TREATMENT

■ The trial judge's decision on whether the defendant proves a *Batson* claim turns, in part, on the trial court's observations during voir dire examination. As the voir dire supervisor, the trial judge can readily perceive discrepancies during jury selection process. These discrepancies may include: (1) the prosecutor failing to question any of the minority jurors yet striking them anyway; (2) the prosecutor striking minority jurors who gave answers similar to those of majority jurors whom the prosecutor did not strike; and (3) the prosecutor striking minority jurors who had the same characteristics professionally, socially, religiously, etc. as majority jurors whom the prosecutor did not strike. These factors may show disparate treatment of prospective jurors. These factors enter into the trial judge's assessment of the prosecutor's credibility and eventually the trial judge's determination of the racial neutrality of the prosecutor's peremptory challenges. *See Young*, 826 S.W.2d at 145.

## THE STATE'S PEREMPTORY CHALLENGES

In his brief on remand, appellant contends that the State peremptorily challenged prospective jurors numbers two, eleven, and twelve for racially motivated reasons. The reasons the State gave for its strikes were:

1. Juror number two, Mr. Davis. This juror's brother was involved in a theft. He was seen nodding, and his head was down and his eyes were closed during the State's voir dire.

2. Juror number eleven, Mr. Jones. This juror had an uncle who had been in trouble with the law.

3. Juror number twelve, Ms. Jennings. This juror told the parties that she had a problem sitting because of back problems, and the State was concerned that her ability to pay attention and give her undivided time to the case would be affected.

## APPELLANT'S CONTENTIONS

Appellant observes that the State struck seven blacks from the jury panel and that appellant struck one. No blacks served on the jury. Appellant is black. Appellant contends the State's explanations for striking the black veniremen were not racially neutral considering the disparate treatment of those jurors when compared with other jurors on the panel who shared the same or similar characteristics as the challenged jurors. Appellant offers the following as disparate treatment of the minority jurors whom the State struck:

1. Juror number two, Mr. Davis: The State struck him because he had a brother involved in a theft case and because he nodded off with his head down and his eyes closed during the voir dire conducted by the State. Appellant compares Mr. Davis to juror number one, Mr. Kudlacek, who had a brother charged with theft of meat for a barbecue. The State did not strike Mr. Kudlacek, who was white.

2. Juror number eleven, Mr. Jones: The State struck him because he had an uncle who had been in trouble with the law. Like Mr. Davis, appellant compares Mr. Jones to Mr. Kudlacek.

3. Juror number twelve, Ms. Jennings: The State struck Ms. Jennings because she had a back problem that the State felt could affect her ability to pay attention and give her undivided attention to the case. Appellant compares Ms. Jennings with juror number twenty-three, Mr. Penn, who was white. Mr. Penn also had a back problem, but the State did not strike him.

## THE STATE'S RESPONSE

The State contends that, when viewed in the light most favorable to the trial court's ruling, the record shows that the trial court's decision on appellant's *Batson* motion was not clearly erroneous. The State's response on each prospective juror whom appellant claims the State struck for racial reasons is:

1. Juror number two, Mr. Davis: The State notes that the prosecutor struck Mr. Davis because he had a brother who had been involved in a theft case. The prosecutor also stated that Mr. Davis nodded off during the prosecutor's voir dire examination. The State notes that a juror's having a relative in trouble with the law is a legitimate reason for exercising a peremptory challenge. *See Sims v. State*, 768 S.W.2d 863, 865 (Tex.App.—Texarkana 1989), *pet. dism'd per curiam*, 792 S.W.2d 81 (Tex.Crim.App.1990). The State also argues that inattentiveness may be a sufficiently race-neutral reason to justify the use of a peremptory challenge. *See Woods v. State*, 801 S.W.2d 932, 937 (Tex.App.—Austin 1990, pet. ref'd).

2. Juror number eleven, Mr. Jones: The State notes that the prosecutor struck Mr. Jones because Mr. Jones had an uncle who had been in trouble with the law. The State argues that a relative's trouble with the law is a racially neutral reason for striking a juror. *Sims*, 768 S.W.2d at 865. The State also argues that the record shows there were two responses by a person or persons identified as Mr. Jones.

The State contends that the record is ambiguous because the juror information lists are not part of the record on appeal. The State argues that even if there were two Mr. Joneses, it is not possible to determine whether one or two people made the responses shown in the record. The State concludes that because of the ambiguity and because we are to give great deference to the trial court's decision, appellant has not shown that the trial court's decision was clearly erroneous.

3. Juror number twelve, Ms. Jennings: The State observes that the prosecutor stated he struck Ms. Jennings because she had a back problem. The State felt that her back problems would affect her ability to pay attention. The State notes that appellant compares Ms. Jennings with juror number twenty-three, Mr. Penn, who also had a back problem. The State asserts that the strike lists, which are part of the record, show that appellant struck Mr. Penn. The State argues that because appellant struck Mr. Penn and the State did not, we cannot find the trial court's ruling on Ms. Jennings clearly erroneous.

The State also argues that the back problems of Ms. Jennings and Mr. Penn were not comparable. The State argues that the record shows that Ms. Jennings said she could not sit through the trial, while Mr. Penn said that if he could stand up every so often, he could sit through the trial. The State concludes that the two jurors were not comparable.

### APPLICATION OF THE LAW TO THE FACTS

#### A. The Voir Dire

The record reflects the following exchange between the prosecutor and the prospective jurors:

[THE PROSECUTOR]: I'll ask you three questions. Please do not answer or raise your hand to any of these questions until I have finished all of them. Okay.

Has anybody on this panel ever been charged, arrested or convicted in any criminal offense greater than a traffic citation? Okay. Charged, arrested or convicted of any criminal offense greater than a traffic citation? That's question number one.

Has anyone on this panel have a friend or a family member who has ever been charged, arrested or convicted of any criminal offense greater than a traffic citation? Okay.

Third question. Has there—is there anybody on this panel that for any health reasons, you have a problem sitting for a day or two during the course of this trial, you have a back problem. Whatever, the flu, you can't give us your undivided attention for a day or two and that's going to cause a problem for you for either side, for giving either side a fair trial.

Now, those are your three questions. Does anybody have an answer of yes to any of those three questions?

First row? Okay.

Is it Kudlacek?

[MR. KUDLACEK] Hey, that's great.

[THE PROSECUTOR]: Is that it? I worried about that when I went over there to talk to you.

Mr. Kudlacek, which question did you have to answer yes to?

[MR. KUDLACEK]: I had a brother that was charged with an offense.

[THE PROSECUTOR]: Here in Dallas?

[MR. KUDLACEK]: Oh, no, this was back east.

[THE PROSECUTOR]: Okay. What was the nature of the offense?

[MR. KUDLACEK]: They wanted to have a bar-b-que and didn't have the money to buy the beef, so they went and got their own.

[THE PROSECUTOR]: Well, sir, is that taken care of? Is it over and done with?

[MR. KUDLACEK]: Oh, yes.

[THE PROSECUTOR]: All right. Did they still have the bar-b-que?

[MR. KUDLACEK]: Yes.

[THE PROSECUTOR]: Okay. Can you set those facts aside and make your determination based upon what you hear in this courtroom?

[MR. KUDLACEK]: Oh, yes.

[THE PROSECUTOR]: Can you set that aside and give both sides a fair trial?

[MR. KUDLACEK]: Yes, sir.

[THE PROSECUTOR]: Thank you, sir. Mr. Davis, did you have a—

[MR. DAVIS]: Well, no, a brother of mine—

[THE PROSECUTOR]: Okay.

[MR. DAVIS]: —played hookey with someone else. Someone else went in the store to steal a coke and gave it to him.

[THE PROSECUTOR]: Probably a theft case?

[MR. DAVIS]: Yes.

[THE PROSECUTOR]: Fine. Has that case been taken care of, is [it] done with, over with?

[MR. DAVIS]: Yes.

[THE PROSECUTOR]: Is there anything about that case or the way it's been handled—the way it was handled by the police department or the district attorney's office or any of the parties that were involved that would make it difficult for you to sit in this case?

[MR. DAVIS]: No.

[THE PROSECUTOR]: Do you think, sir, that you can set aside those facts and give both the State of Texas as well as the defense a fair trial?

[MR. DAVIS]: Yes.

[THE PROSECUTOR]: Okay.

\* \* \* \* \* \*

Mr. Jones?

[MR. JONES]: May I ask a question?

[THE PROSECUTOR]: Yes.

[MR. JONES]: I have had a family member involved in an embezzlement case.

[THE PROSECUTOR]: All right. Okay. Has that case been taken care of? Is it over and done with?

[MR. JONES]: Yes.

[THE PROSECUTOR]: It took place in Dallas?

[MR. JONES]: Yes.

[THE PROSECUTOR]: Okay. Now that's pretty close, that's kind of close to the kind of offense that we are dealing with here. It's fraud so-to-speak, okay? Now what family member was it, a close family member?

[MR. JONES]: Yes.

[THE PROSECUTOR]: Sir, do you think you're so close to that set of circumstances that it may cause problems some here?

[MR. JONES]: No, it's over with.

[THE PROSECUTOR]: Now do you feel that the district attorney's office or the police agencies that were involved in this case treated your family members fairly?

[MR. JONES]: Yes.

[THE PROSECUTOR]: So, if you heard testimony from a police officer, or as you well know this offense is initiated by the district attorney's office and brought forward, do you think that you can give the State of Texas as well as the defense a fair trial?

[MR. JONES]: Yes, I can.

[THE PROSECUTOR]: Do you think you can do that?

[MR. JONES]: Yes.

[THE PROSECUTOR]: Thank you. Anybody else in the first row? Some more hands?

(the individual voir dire of juror number ten, Ms. Stewart, is omitted)

\* \* \* \* \* \*

[THE PROSECUTOR]: Mr. Jones?

[MR. JONES]: I had an uncle that was arrested a long time ago.

[THE PROSECUTOR]: Okay, for what, sir?

[MR. JONES]: I don't know.

[THE PROSECUTOR]: I think we've all got one of those uncles. I used to cry about it. My mother told me, son, you can pick your friends but you can't pick your family.

All right. Do you think that would cause you a problem?

[MR. JONES]: No.

[THE PROSECUTOR]: Do you think you can be fair to both sides?

[MR. JONES]: Yes.

[THE PROSECUTOR]: Can you give Mr. Weddle and his client a fair trial as well as the State?

[MR. JONES]: Yes.

[THE PROSECUTOR]: Okay. Thank you.

Did you have your hand up?

Yes, ma'a [sic]. Ms. Jennings?

[MS. JENNINGS]: Your last question about sitting for a couple of hours. I hurt my back. I can't.

[THE PROSECUTOR]: Okay, we'll call you up, Ms. Jennings, fine.

\* \* \* \* \* \*

[THE PROSECUTOR]: Anybody else? Yes sir.

[MR. PENN]: I have a lower back problem.

[THE PROSECUTOR]: Okay. Mr. Penn, right?

[MR. PENN]: Yes.

[THE PROSECUTOR]: Thank you, sir.

### B. Comparative Analysis— Disparate Treatment

#### 1. Juror Number Two, Mr. Davis

■■■ Appellant compares juror number two, Mr. Davis, to juror number one, Mr. Kudlacek. Both had relatives charged with theft. The State struck Mr. Davis but did

not strike Mr. Kudlacek. Mr. Kudlacek was white, Mr. Davis was black. The State argues that although both jurors had relatives charged with crimes, the State also said it struck juror Davis because he was inattentive. Kinship to a person who has had trouble with the law is a racially neutral reason for striking a juror. *Sims*, 768 S.W.2d at 865. Additionally, inattentiveness may be a sufficiently race-neutral reason to justify the use of a peremptory challenge. *Woods*, 801 S.W.2d at 937. Viewed in the light favorable to the trial court's ruling, the record supports the trial court's decision on juror Davis. The trial court's ruling was not clearly erroneous. *Whitsey*, 796 S.W.2d at 726.

#### 2. Juror Number Eleven, Mr. Jones

 Appellant compares juror number eleven, Mr. Jones, to juror number one, Mr. Kudlacek. Juror Jones was black, juror Kudlacek was white. Each of these jurors had a family member who had prior trouble with the law.

The State contends that the record is ambiguous because there are one or more Mr. Joneses identified in the record. The State argues that because the record is ambiguous, we are to give the trial court's ruling great deference. The State contends that the trial court's ruling on juror number eleven, Mr. Jones, was not clearly erroneous.

We disagree with the State's conclusion that the record is ambiguous. In our view, the record clearly shows there were two Mr. Joneses. The first Mr. Jones stated, "I have a family member involved in an embezzlement case." The second Mr. Jones stated, "I have an uncle that was arrested a long time ago." The prosecutor asked the second Mr. Jones for what. The second Mr. Jones responded that he did not know.

The prosecutor questioned an intervening juror, Ms. Stewart, between questioning the two Mr. Joneses. The record identifies Ms. Stewart as juror number ten. The prosecutor clearly identified Mr. Jones as juror number eleven when he stated his reasons for striking that particular juror. Both Mr. Kudlacek and Mr. Jones had rela-

tives charged with crimes. Kinship to a person with criminal charges is a racially neutral reason for striking a juror. *Sims*, 768 S.W.2d at 865. Both Kudlacek and Jones gave similar answers to the prosecutor's questions about relatives charged with crimes. Mr. Kudlacek was white, Mr. Jones was black. The prosecutor did not strike Mr. Kudlacek but did strike Mr. Jones. These facts show disparate treatment of prospective jurors on a racial basis. Viewed in the light most favorable to the trial court's ruling, we cannot say the record supports the ruling on juror Jones. The record leaves us with a definite and firm conviction that the trial court made a mistake. *Whitsey*, 796 S.W.2d at 721, 728.

#### 3. Juror Number Twelve, Ms. Jennings

Appellant compares Ms. Jennings with juror number twenty-three, Mr. Penn. Both had back problems. Ms. Jennings was black. Mr. Penn was not black. The State struck Ms. Jennings, appellant struck Mr. Penn.

Appellant argues the only distinguishable factor between Jennings and Penn is their race. The State argues that because of the trial court's individual examination of the two prospective jurors, the back problems of the two jurors were not comparable. The State contends the record shows that Ms. Jennings back was already giving her problems just from sitting during voir dire examination. She said she would have difficulty in paying attention because of her back problem. Conversely, the State claims that Mr. Penn said he had been sitting during the entire voir dire but was suffering no problems. Penn stated that sitting on hard benches would hurt his back. However, he told the court that if he could stand up periodically, this alleviated his problem. The court said Mr. Penn could stand up when necessary.

 A juror's physical problem is a racially neutral reason for exercising a peremptory strike. *See Roy v. State*, 813 S.W.2d 532, 538 (Tex.App.—Dallas 1991, pet. ref'd). The record reflects a difference in the responses by jurors Jennings and Penn when the court questioned them indi-

vidually. Viewed in the light most favorable to the trial court's ruling, the record supports the trial court's decision on juror Jennings. The trial court's ruling was not clearly erroneous. *Whitsey,* 796 S.W.2d at 721.

## CONCLUSION

The record leaves us with the definite and firm conviction that the trial court made a mistake in its ruling on juror number eleven, Mr. Jones. We hold that the trial court's finding was clearly erroneous. *Whitsey,* 796 S.W.2d at 728. One peremptory challenge for racially motivated reasons invalidates the entire jury selection process. *Linscomb,* 829 S.W.2d at 166.

We reverse the trial court's judgment. We remand the cause for a new trial.

ONION, Justice, dissenting.

*Young v. State*[1] held that a defendant was not required to request the trial judge to make his findings upon a *Batson*[2] motion based on comparisons of venirepersons in order to have the same evidence considered on a direct appeal raising the issue of the prosecutor's peremptory challenges. *Young,* 826 S.W.2d at 145–46.

In order to reach this decision, the court abandoned the now famous footnote 6A in *Tompkins v. State,* 774 S.W.2d 195, 202 (Tex.Crim.App.1987), *aff'd,* 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989), and held that the footnote was not to be read as holding that a "comparison analysis" must be made at the trial level before it can be argued on appeal. *Young,* 826 S.W.2d at 144; *see also Vargas v. State,* 838 S.W.2d 552 (Tex.Crim.App.1992); *Henderson v. State,* 826 S.W.2d 156, 158 (Tex.Crim.App. 1991).

With all due respect, in my humble view, the 5–4 *Young* opinion was wrongly decided. It permits a partial trial de novo while an appellate court pretends that the standard of review is the "clearly erroneous"

standard with great deference being given to the trial court's findings. *See Hill v. State,* 827 S.W.2d 860, 865 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 113 S.Ct. 297, 121 L.Ed.2d 221 (1992) (standard of review is "clearly erroneous"); *Williams v. State,* 804 S.W.2d 95, 101 (Tex.Crim.App.) (op. on remand), *cert. denied,* —— U.S. ——, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991); *Whitsey v. State,* 796 S.W.2d 707, 726 (Tex. Crim.App.1989) (op. on reh'g). Thus, *Young* permits the trial court to be "sandbagged." *Cf. Seefurth v. State,* 422 S.W.2d 931, 936 (Tex.Crim.App.1967).

Under the *Batson* procedure, *see infra* footnote 5, once the prosecutor has given his racially neutral explanations for peremptorily striking a certain venireperson or venirepersons, a defendant in support of his motion can cross-examine the prosecutor and offer evidence and argument concerning comparative analysis and disparate treatment of the prospective jurors to show that the prosecutor's explanations are merely a pretext or a sham. It must be remembered that the defendant has the ultimate burden to *"persuade the trial judge* by a preponderance of the evidence that the allegations of purposeful discrimination are true in fact." *Tompkins,* 774 S.W.2d at 202 (emphasis added); *see also* TEX.CODE CRIM.PROC.ANN. art. 35.261(a) (Vernon 1989); *Shields v. State,* 820 S.W.2d 831, 833 (Tex.App.—Waco 1991, no pet.); Despite the ultimate burden of persuasion before the trial court, *Young* permits a defendant to lie behind a log and make no mention of the disparate treatment of prospective jurors or urge any type of comparative analysis to the trial court in an attempt to show that the prosecutor's explanations were a pretext or a sham. Once the trial court has overruled the *Batson* motion and a conviction occurs, the defendant in most cases has the right of appeal. If an appeal is undertaken, the defendant's counsel, either the trial counsel

---

1. *Young v. State,* 826 S.W.2d 141 (Tex.Crim.App. 1991). The appellant in this cause was convicted by a jury of the offense of forgery. The trial judge assessed appellant's punishment at forty years' imprisonment after finding the allega-

tions in two enhancement of punishment paragraphs of the indictment to be true.

2. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

or a different attorney on appeal, will have available to him the transcribed record of the voir dire examination. Counsel may then pore over the record at leisure to determine if there is any indication of disparate treatment of venire members or evidence of a comparative analysis not presented to the trial court as such but which under *Young* can be raised for the first time on appeal to undermine the trial court's findings. This is true even if the defendant was afforded ample opportunity to present persuasive evidence of comparability at the trial court level to support his *Batson* motion and did not present such evidence or call attention to such matters. *Young* explains that the State may also use the now-transcribed voir dire examination to controvert the comparisons raised on appeal in a trial de novo atmosphere. *Young*, 826 S.W.2d at 146. While the State may use the voir dire record to support its neutral explanations, it appears it cannot broaden its neutral explanations on appeal. *Cf. Wright v. State*, 832 S.W.2d 601, 605 (Tex.Crim.App.1992) (Benavides, J., concurring). If the prosecutor's explanations are left unchallenged in the trial court, the prosecutor is unable to further explain his reason or dispel the inference that he acted with improper motive.

Under the *Young* order of procedure, the appellate court views the cold record of the *Batson* hearing in light of the contentions raised only on appeal to determine if the trial court's ruling was "clearly erroneous." Each trial judge is assumed to have a computer-type mind able to recall every bit of "evidence" from the voir dire examination which may last hours on end over a period of several days. The trial judge, prior to any *Batson* motion, is required to remember the specific details of the interrogation of each venireperson, the length of the interrogation, the nature and numbers of questions asked, and to determine which venirepersons were struck or not struck by either party even though this latter "evidence" is outside the "evidence" of the voir dire examination. *See* TEX.CODE

CRIM.PROC.ANN. arts. 35.26 & 35.261 (Vernon 1989). If a *Batson* motion is filed and the procedure advances to the point where the prosecutor recites his racially neutral explanations for his peremptory challenges and the defendant leaves the explanations unchallenged, thus sidestepping his ultimate burden of persuasion in the trial court by not raising any comparisons of the venirepersons, the trial court, without the benefit of a transcribed voir dire record, must speculate about what factors the defendant may raise on appeal for the first time. While a trial judge might be able to detect some "deficiencies" by himself, that is not his normal role in our system of justice. He would have to take on the role of defense counsel, inventing possible arguments as to why the prosecutor's stated explanations might not be sufficient, while at the same time keeping an open mind so as to rule on the *Batson* motion impartially. This is not the way our adversary system should work.[3]

*Young* was wrongly decided not only for the foregoing reasons, but also for the reasons set forth by Judge Campbell in his dissenting opinion in *Young*, 826 S.W.2d at 147–49, and by Judge Benavides in his dissenting opinion on rehearing in *Young*, 826 S.W.2d at 153–56.

The issue confronted in *Young* was apparently *res novo* in Texas. Before *Young* spawns too prolifically, it is the fervent hope of this writer that the Texas Court of Criminal Appeals will carefully assay and reconsider its decision. It has been the great tradition of that court not to be afraid to reconsider any decision and change its mind in the interest of justice in our state.

*Young* is, nonetheless, the law at the present time, and we as appellate judges must follow it. On February 11, 1989, after the voir dire examination was concluded and before the selected jurors were sworn, appellant Young lodged his *Batson* objection.[4] Although appellant struck one

---

3. One may wonder just how a trial court may protect itself and the tax-paying public from

*Young* in order to prevent unnecessary reversals and time-consuming and costly remands.

4. This called into play the *Batson* procedure. A

black venireperson, he complained that the State had peremptorily struck seven black venire members, which showed a "pattern" of racial discrimination. Appellant asked the trial court to require the prosecutor to provide explanations for the strikes. The prosecutor, without any ruling from the trial court on whether a prima facie case had been established,[5] immediately articulated detailed, racially neutral reasons for all seven challenged strikes. Therefore, appellant did not offer evidence or seek to cross-examine the prosecutor. He quarreled with the State's reason for striking one of the black veniremen and argued generally about being denied a jury of his peers. *See Young,* 826 S.W.2d at 142. Hearing no other evidence or argument, the trial court overruled the *Batson* claim.

Upon remand of this cause by the Texas Court of Criminal Appeals, the parties were permitted to rebrief the issue. *See Robinson v. State,* 790 S.W.2d 334, 335 (Tex. Crim.App.1990) (per curiam). In his remand brief, appellant complains of only three of the State's peremptory challenges, those being the strikes made against potential jurors numbers two, eleven, and twelve. I agree with the majority's disposi-

---

prosecutor is prohibited by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution from challenging potential jurors solely on the basis of race. *Batson,* 476 U.S. at 89, 106 S.Ct. at 1719; *see also* Tex.Code Crim.Proc.Ann. art. 35.261 (Vernon 1989); *Hill v. State,* 775 S.W.2d 754, 755 (Tex. App.—Fort Worth 1989, pet. ref'd) (interpreting State's constitution to prohibit *Batson*-type discrimination in selection of jury); *Oliver v. State,* 808 S.W.2d 492 (Tex.Crim.App.1991). The burden of establishing a prima facie case of purposeful racial discrimination is on the defendant. *Tennard v. State,* 802 S.W.2d 678, 680 (Tex.Crim.App.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2914, 115 L.Ed.2d 1077. Under the *Batson* holding itself, the defendant, in order to establish a prima facie case, is required to show: (1) that he is a member of a cognizable racial group; (2) that the prosecutor has exercised peremptory challenges to remove members of the defendant's race from the jury panel; and (3) that these facts and any other relevant circumstances raise an inference that the prosecutor used the practice to exclude the veniremen from the jury on account of their race. A defendant can also rely upon the fact that peremptory challenges constitute a jury selection practice that permits those to discriminate who have a mind to discriminate. *Batson,* 476 U.S. at 96, 106 S.Ct. at 1723; *Keeton v. State,* 724 S.W.2d 58, 65 (Tex.Crim.App.1987).

Since the time of appellant Young's trial, *Powers v. Ohio,* —— U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) implicitly eliminated the requirements that a defendant must be a member of a cognizable racial group and that there must be racial identity between the objecting defendant and the excluded jurors. *See Hernandez v. State,* 808 S.W.2d 536, 539 (Tex.App.—Waco 1991, no pet.); *see also Edmonson v. Leesville Concrete Co.,* —— U.S. ——, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (applying *Batson* to civil cases). *Cf. Georgia v. McCollum,* —— U.S. ——, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992) (criminal defendants are no more free to exercise peremptory challenges on racial grounds than are prosecutors or civil litigants).

Once a defendant makes a prima facie showing, the burden shifts to the State to come forward with racially neutral explanations for the challenges. *Tompkins,* 774 S.W.2d at 201; *Keeton v. State,* 749 S.W.2d 861, 868 (Tex.Crim.App. 1988). If the prosecutor articulates racially neutral reasons for the strikes, the defendant may offer evidence showing that the prosecutor's reasons are merely a sham or pretext, *Keeton,* 749 S.W.2d at 868, and he may cross-examine the prosecutor, *Salazar v. State,* 818 S.W.2d 405, 407 (Tex.Crim.App.1991), and offer argument for that purpose. The defendant has the ultimate burden "to persuade the trial court by a preponderance of the evidence that the allegations of purposeful discrimination are true in fact." *Tompkins,* 774 S.W.2d at 202; *see also Shields,* 820 S.W.2d at 833. At a *Batson* hearing, the trial court is the factfinder, and it is the court's responsibility to weigh the evidence and determine the credibility of the witnesses. *Tompkins,* 774 S.W.2d at 202 n. 6. An appellate court is not free to substitute its judgment of the witnesses' credibility and evidentiary weight for those of the factfinder. *Id.* at 202. The trial court's ruling will not be reversed unless it is clearly erroneous. *Williams,* 804 S.W.2d at 101; *Tennard,* 802 S.W.2d at 681. To determine whether the factfinder's decision is "clearly erroneous," an appellate court must look to the record to see if it is left with the definite and firm conviction that a mistake has been committed. *Hill,* 827 S.W.2d at 865; *see also Hernandez v. New York,* —— U.S. ——, ——, 111 S.Ct. 1859, 1872, 114 L.Ed.2d 395 (1991).

5. Where the prosecutor articulates his reasons for alleged racially discriminatory peremptory challenges without any prompting by the trial court and the trial court rules on the ultimate question of intentional discrimination, the preliminary issue of whether a defendant has made a prima facie showing becomes moot. *See Hernandez,* —— U.S. at ——, 111 S.Ct. at 1866; *Hill,* 827 S.W.2d at 865; *Dewberry v. State,* 776 S.W.2d 589, 591 (Tex.Crim.App.1989).

tion of appellant's complaints that potential jurors numbers two and twelve, Mr. Davis and Ms. Jennings, were improperly struck. Viewed in the light most favorable to the trial court's ruling, there was no *Batson* error present. The prosecutor gave sufficiently race-neutral explanations and reasons for striking both of these members of the jury panel. The trial court's ruling as to these two panel members was not clearly erroneous. *Whitsey,* 796 S.W.2d at 726.

This, then, leaves the peremptory challenge to prospective juror number eleven, the so-called second Mr. Jones. The prosecutor stated that he struck Mr. Jones because Jones had an uncle who had been in trouble with the law. Kinship to a person who has an arrest record or has had difficulty with the law can constitute a legitimate racially neutral reason for striking a prospective juror. *United States v. Guerra–Marez,* 928 F.2d 665, 668 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 322, 116 L.Ed.2d 263 (1991); *McHenry v. State,* 823 S.W.2d 667, 670 (Tex.App.—Dallas 1991), *remanded on other grounds,* 829 S.W.2d 803 (Tex.Crim.App.1992); *Sims v. State,* 768 S.W.2d 863, 865 (Tex.App.—Texarkana 1989), *pet. dism'd per curiam,* 792 S.W.2d 81 (Tex.Crim.App.1992); *Rodgers v. State,* 725 S.W.2d 477, 480–81 (Tex.App.—Houston [1st Dist.] 1987, pet. ref'd); *Rijo v. State,* 721 S.W.2d 562, 564 (Tex.App.—Amarillo 1986, no pet.); *see also Garcia v. State,* 833 S.W.2d 564, 567 (Tex.App.—Dallas 1992, pet. granted).

The prosecutor's racially neutral explanation was not attacked in the trial court on a comparative analysis/disparate treatment basis. Appellant now contends that while the prosecutor struck Mr. Jones, a black venireman, he did not strike Mr. Kudlacek, a white venireman. Kudlacek had a brother who was charged with theft of some bar-b-que "back east." The majority concludes that the failure to strike Mr. Kudlacek demonstrated a disparate treatment of prospective jurors on a racial basis and that viewing the facts in the light most favorable to the trial court's ruling and under the "clearly erroneous" standard of review, the cold record leaves a definite and firm conviction that the trial court made a mistake. I cannot agree.

In *United States v. Valley,* 928 F.2d 130, 136 (5th Cir.1991), the prosecutor's strikes of black venirepersons for the race-neutral reason that they had relatives who had been in difficulty with the law was not rendered pretextual or a sham because the prosecutor had not struck *all* white venirepersons who had kinship to individuals charged with a crime in light of the great deference to be given to the trial court's findings. In the instant case, Mr. Jones, the black venireman who was struck by the prosecutor, had an uncle who had had previous difficulty with the law. The white venireman, Mr. Kudlacek, had a brother who was involved in the theft of some bar-b-que "back east."

A prosecutor's explanation for the exercise of a peremptory challenge need not be quantifiable and may include intuitive assumptions provided the intent is not race based. *United States v. Clemons,* 941 F.2d 321, 325 (5th Cir.1991); *see also Keeton,* 749 S.W.2d at 865 (peremptory strikes may be based on the prosecutor's legitimate "hunches" so long as racial discrimination is not the motive).

> A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.

*Hernandez,* —— U.S. at ——, 111 S.Ct. at 1866.

In the instant case, the trial court chose to believe the prosecutor's race-neutral explanation for striking Mr. Jones, rejecting the appellant's assertions that the reasons were pretextual. In *Batson* it was explained that the trial court's decision on the ultimate question of discriminatory intent represents "a finding of fact of the sort accorded a great deference on appeal." *Hernandez,* —— U.S. at ——, 111 S.Ct. at 1868.

*Batson's* treatment of intent to discriminate as a pure issue of fact, subject to review under a deferential standard, accords with our treatment of that issue in other equal protection cases.

\* \* \* \* \* \*

Deference to trial court findings on the issue of discriminatory intent makes particular sense in this context because, as we noted in *Batson*, the finding will "largely turn on evaluation of credibility." In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies "peculiarly within a trial judge's province."

*Hernandez,* —— U.S. at ——, 111 S.Ct. at 1869 (citations omitted); *see also Newsome v. State,* 829 S.W.2d 260, 266 (Tex.App.— Dallas 1992, no pet.).

The *Hernandez* court discounted a claim that an appellate court should make an independent review of the facts involved in a *Batson* contention. The court noted that proper deference is to be shown to factual determinations by the court below when the reviewing court is not left with a definite and firm conviction that a mistake has been committed. *Hernandez,* —— U.S. at ——–——, 111 S.Ct. at 1870–71; *see Vargas,* 838 S.W.2d at 554.

If an appellate court accepts a trial court's finding that a prosecutor's race-neutral explanation for his peremptory challenge should be believed, it is difficult to see how the appellate court nevertheless could find discrimination. "The credibility of the prosecutor's explanation goes to the heart of the equal protection analysis, and once that has been settled, there seems nothing left to review." *Hernandez,* —— U.S. at ——, 111 S.Ct. at 1870.

Absent intentional discrimination violative of the Equal Protection Clause, par-

ties should be free to exercise their peremptory strikes for any reason or no reason at all. The peremptory challenge is "as Blackstone says, an arbitrary and capricious right; and it must be exercised with full freedom, or it fails of its full purpose." *Lewis v. United States,* 146 U.S. 370, 378, 13 S.Ct. 136, 139, 36 L.Ed 1011 (1892) [internal quotations omitted].... *Batson* requires only that the prosecutor's reason for striking a juror not *be* the juror's race.

*Hernandez,* —— U.S. at ——–——, 111 S.Ct. at 1874–75 (O'Connor, J., concurring) (emphasis in original).

In the instant case, the prosecutor gave a well-accepted racially neutral explanation for exercising a peremptory strike against Mr. Jones. The trial court had the opportunity to observe the prosecutor's demeanor and to pass on his credibility, which is not subject to review by this Court. The fly in the ointment is the comparative analysis. The prosecutor struck venireman Jones but not venireman Kudlacek for the same reason—kinship with someone who had been in difficulty with the law. The objective factors discussed in *Keeton,* 749 S.W.2d at 867, including "6. Disparate treatment of members of the jury venire with the same characteristics ...," certainly may be considered in evaluating the trial judge's overruling of a *Batson* claim, "but they are not determinative." *Vargas,* 838 S.W.2d at 554. The objective factor in the instant case has already been considered. I would hold that the evidence of "comparability" is not sufficiently concrete. It should be remembered that the United States Supreme Court made no mention of a "comparative analysis" in its discussion of a defendant's burden in *Batson, Young,* 826 S.W.2d at 145, and neither does article 35.261.

Great deference is given to the trial court's findings under the "clearly erroneous" standard of review. In viewing the record in the light most favorable to the trial court's findings, I, unlike the majority, am *not* left with a "definite and firm conviction that a mistake has been committed." *Vargas,* 838 S.W.2d at 554. We should keep in mind that where "there are

two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *Hernandez*, —— U.S. at —— – ——, 111 S.Ct. at 1871–72; *Garcia v. State*, 833 S.W.2d 564, 567 (Tex.App.—Dallas 1992, pet. granted); *Woods v. State*, 801 S.W.2d 932, 935 n. 3 (Tex.App.—Austin 1990, pet. ref'd).

I respectfully dissent.

Although not on the panel, KINKEADE, J., as a member of the Court agrees with the dissent.