Nelson BOLDEN, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–94–00276–CR.

Court of Appeals of Texas,
Tyler.

April 29, 1996.

Carl E. Moore, for appellant.

Edward Marty, Tyler, for appellee.

HOLCOMB, Justice.

Nelson Bolden ("Appellant") appeals his conviction of engaging in organized criminal activity. The jury assessed Bolden's punishment at 80 years' imprisonment and a $10,000 fine. Appellant was tried jointly with Montoya Caddell and James Brooks, who were charged with the same offense. We will **affirm.**

In his first three points of error, Appellant challenges the legal and factual sufficiency of the evidence and denial of his motion for an instructed verdict.

When an appellant challenges both the legal and factual sufficiency of the evidence, an appellate court must first determine whether evidence adduced at trial was

legally sufficient to support the verdict. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Cr. App.1996). The standard for reviewing the legal sufficiency of the evidence is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *See also Geesa v. State*, 820 S.W.2d 154, 157 (Tex.Cr.App.1991); *Jackson v. State*, 672 S.W.2d 801 (Tex.Cr.App.1984). After an appellate court determines that the evidence is legally sufficient to support the verdict under the *Jackson* standard, the court may then proceed to review factual sufficiency. *Clewis*, 922 S.W.2d at 129. In conducting a factual sufficiency review, this Court must view all the evidence impartially and "set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Clewis*, 922 S.W.2d at 134; *Stone v. State*, 823 S.W.2d 375 (Tex.App.—Austin 1992, pet. ref'd, untimely filed).

■ A person commits the offense of engaging in organized criminal activity if, with intent to establish, maintain, or participate in a combination, he commits, or conspires to commit, one of a number of enumerated offenses, including the unlawful delivery of a controlled substance. TEX.PENAL CODE ANN. § 71.02(a)(5) (Vernon 1992). A "combination" is defined as three or more persons who collaborate in carrying on criminal activities. TEX.PENAL CODE ANN. § 71.01(a) (Vernon 1992).

■ When, as here, the indictment alleges a conspiracy to commit the enumerated offense, the State must prove the defendant's intent to participate in a criminal combination, and that the defendant performed some act, not necessarily criminal in itself, in furtherance of the agreement. *Barber v. State*, 764 S.W.2d 232, 235 (Tex.Cr.App.1988). We look first at the evidence of Appellant's intention to participate in the combination, and, thereafter, at the evidence of whether Appellant participated in committing one or more of the overt acts alleged.

■ The evidence as to whether Bolden was involved in a conspiracy and whether he committed the overt act was largely circumstantial; however, in a circumstantial evidence case, it is not necessary that every fact point directly and independently to the guilt of the accused. The cumulative force of all the incriminating circumstances may be sufficient to warrant a conclusion of guilt. *Beardsley v. State*, 738 S.W.2d 681 (Tex.Cr. App.1987).

■ Direct evidence is rarely available to prove a conspiracy hatched and executed in secrecy. "Evidence of the acts and conduct of the conspirators, as well as circumstances surrounding these acts and conduct, can be used to show the existence of a positive agreement." *Kennard v. State*, 649 S.W.2d 752, 763 (Tex.App.—Fort Worth 1983, pet. ref'd). Circumstantial evidence cases have no different standard of review than those cases supported by direct evidence. *Geesa v. State*, 820 S.W.2d 154, 158 (Tex.Cr.App.1991). Almost invariably, circumstantial evidence, including the conspirator's conduct, must be relied upon to prove the essential elements of the crime. *Farrington v. State*, 489 S.W.2d 607 (Tex.Cr. App.1972). Similar methods of operation, together with joint activities and relationships, support the finding of a single conspiracy. *United States v. Ochoa*, 609 F.2d 198 (5th Cir.1980); *Kennard*, 649 S.W.2d at 764.

■ The State's evidence focused on the sale of crack cocaine in an area of Tyler known as the "Graveyard." On December 14 and 15, 1990, Tyler police clandestinely videotaped a large number of apparent drug transactions; approximately 100 apparent purchases were observed during the five hours of videotaped surveillance. Typically, buyers drove into the area, and sellers approached the drivers while still in their cars. Sellers displayed "rocks" of crack cocaine, and exchanged merchandise and money through the buyer's car window. In exchange for immunity from prosecution, two co-defendants, Ravin Tucker ("Tucker") and Rosiland Guster ("Guster"), testified on be-

half of the State. Tucker, who was arrested after buying a rock of cocaine from an unidentified seller, testified regarding the details of three crack cocaine purchases she made in the area, including the last purchase which was videotaped. Guster also testified to her own buying and selling of crack cocaine at the Graveyard. There was also evidence that undercover officers had purchased crack from some of the individuals and some of these transactions were videotaped.

Taken as a whole, the evidence showed not only individual drug transactions, but the existence of a loosely organized drug market evidencing tacit consent and agreement among the various sellers. From the cooperative activity involved in selling the cocaine for a common unit price at a common time and place, utilizing a common method of sale, a jury could rationally have inferred the existence of this criminal collaboration. The sellers observed certain conventions among themselves to more profitably distribute crack cocaine. Specifically, the evidence showed that the sellers were in the practice of selling for each other and referring buyers to other "sales persons" when one of them was out of "product." There was evidence that, when the police entered the area, a warning was given by the person who first observed the police. There was also a common "burn barrel" into which contraband could be quickly thrown and destroyed in the event of a raid. All of this evidence was sufficient to support an inference by the jury that these activities were not discreet, unrelated drug transactions, but rather constituted a criminal collaboration with a common purpose.

■■■ Of the thirty-nine overt acts alleged in the indictment, the only one which directly referred to Appellant was the allegation that:

> [O]n or about the 14th day of December 1990, Jerry Barnes and Nelson Bolden approached a vehicle.

With respect to this overt act, the evidence included a videotape of Appellant approaching a car at 9:36 a.m. and then selling what appeared to Officer Hairford, who was viewing the videotape along with the jury, to be a rock or rocks of crack cocaine to an unidentified driver. In addition to the overt act set forth above which was alleged in the indictment, other evidence was introduced by the State. Hairford identified Appellant several times in the videotape and identified various acts of Appellant which were, in his professional opinion, consistent with criminal behavior in drug transactions. Guster testified regarding her own sales and purchases of drugs and that in the recent past she had seen Appellant selling drugs at this location, both on his own and on behalf of others. Hairford identified Appellant in the tape several additional times. On cross-examination Hairford admitted he did not know that it was crack cocaine as he did not have possession of the rocks which appeared to be sold by Bolden to the individual at 9:36 a.m.[1]

Reviewing this evidence in the light most favorable to the prosecution, we conclude that a rational jury could have found beyond a reasonable doubt that a criminal combination existed to distribute crack cocaine, that Bolden committed the overt act alleged in the indictment and that such overt act, considered in context, evidenced Bolden's intent to participate in the criminal combination. We further find, after reviewing all the evidence, that the verdict is not contrary to the overwhelming weight of the evidence so as to be clearly wrong and unjust. Appellant's first three points of error are overruled.

In his fourth and fifth points of error, Appellant claims the trial court erred in overruling his motion to quash the jury panel, thereby depriving Appellant of his rights under *Batson v. Kentucky*[2] and TEX.CODE CRIM.PROC.ANN. art. 35.261. Appellant argues that the State exercised its peremptory challenges in a racially discriminatory manner. However, Appellant does not complain of any particular peremptory challenge in the record. Instead, his brief contains the following conclusory statement:

---

1. Undercover officers purchased "rocks" from others named in the indictment. When subsequently testing such rocks, officers discovered that the rocks were cocaine.

2. 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

[T]he State's attorney failed to treat black veniremen equally with their white counterparts. The prosecutor's racially-neutral reasons pale in the face of the lack of peremptory challenges to the above-described white veniremen which mystically were not objectionable as the similarly situated black veniremen.

Bolden is an African–American, and the State exercised its peremptory challenges against nine of the eighteen African–Americans in the strike zone, producing a jury with three African–Americans. The trial judge found that this pattern of strikes arguably called for a *Batson* hearing to determine whether the State's strikes were exercised for non-racial reasons. Following a hearing on Appellant's *Batson* motion, the trial judge ruled that the State had not exercised its strikes in a racially discriminatory manner.

■■■■ In *Batson* and its progeny, the Supreme Court established a procedure for testing challenges to a state's use of peremptory jury strikes. First, the defendant must establish a *prima facie* showing that the State exercised its peremptory challenges on the basis of race. Then the burden shifts to the State to articulate racially-neutral explanations for its questioned strikes. The defendant may, thereafter, rebut the State's explanations. Ultimately, the trial court must determine whether the defendant has carried his burden of proving purposeful racial discrimination by the State. *Batson,* 476 U.S. at 96–98, 106 S.Ct. at 1722–23. Where the State offers race-neutral reasons for the exercise of its peremptory strikes, and the trial court rules on the issue of purposeful discrimination, a reviewing court need not address whether a defendant made a *prima facie* showing of racial discrimination. *Hill v. State,* 827 S.W.2d 860, 865 (Tex.Cr.App.), *cert. denied,* 506 U.S. 905, 113 S.Ct. 297, 121 L.Ed.2d 221 (1992).

■■■■ An appellate court must review the record of the *Batson* hearing and the *voir dire* examination in the light most favorable to the trial court's ruling. *Cantu v. State,* 842 S.W.2d 667, 689 (Tex.Cr.App.1992), *cert. denied,* 509 U.S. 926, 113 S.Ct. 3046, 125 L.Ed.2d 731 (1993); *Harris v. State,* 827 S.W.2d 949, 955 (Tex.Cr.App.), *cert. denied,* 506 U.S. 942, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992). This Court must review the State's reasons for exercising its strikes to determine if such explanations are valid or merely pretextual. *Cantu,* 842 S.W.2d at 689. A reviewing court will not disturb a trial court's ruling that the State exercised its strikes in a race-neutral manner unless such ruling is clearly erroneous. *Cantu,* 842 S.W.2d at 689; *Harris,* 827 S.W.2d at 955.

■■■■ We have examined the record to determine whether the State's proffered reasons for excluding the stricken jurors were pretextual. The prosecutor stated in detail the reasons for exercise of the State's peremptory strikes. The State struck those venirepersons who had criminal records, those with addresses coinciding with others with criminal records, those who believed that rehabilitation is the purpose of punishment, those related to the defendants, and those who were not candid in admitting or volunteering information. The trial court dictated into the record her findings that the reasons given were race-neutral. After reviewing the record, we cannot say that the trial judge's ruling, that the State's exercise of its strikes was race-neutral, was clearly erroneous.

Therefore, we hold that the trial judge was not clearly erroneous in concluding that the State's explanation for its strikes were race-neutral. Appellant's fourth and fifth points of error are overruled.

The judgment of the trial court is **affirmed.**