TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00050-CR






Paul Thomas, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT


NO. B-98-0300-S, HONORABLE BARBARA WALTHER, JUDGE PRESIDING







The district court found appellant Paul Thomas guilty of engaging in organized
criminal activity and assessed punishment at imprisonment for ten years. In two points of error,
appellant challenges the legal and factual sufficiency of the evidence. We will affirm the
conviction, but remand the cause for reassessment of punishment.


The Alleged Offense

A person commits an offense if, with the intent to establish, maintain, or participate
in a combination or in the profits of a combination, he commits or conspires to commit the
unlawful delivery of a controlled substance. See Tex. Penal Code Ann. § 71.02(a)(5) (West Supp.
1999). "'Combination' means three or more persons who collaborate in carrying on criminal
activities . . . ." Id. § 71.01(a) (West 1994). "'Conspires to commit' means that a person agrees
with one or more persons that they or one or more of them engage in conduct that would
constitute the offense and that person and one or more of them perform an overt act in pursuance
of the agreement." Id. § 71.01(b).

The indictment in this cause alleged:


Paul Thomas, Defendant, together with the following co-conspirators, to-wit:
Johnny Wilson, Jr., Curtis Ford, Marcus Stewart, Darius Brawley, Jane Doe, a
juvenile, Marquette Walker, and Earl Gray, on or about the 3rd day of March,
A.D. 1998, . . . did then and there, with the intent to establish, maintain,
participate in a combination and the profits of a combination, commit the offense
of delivery of a controlled substance, to-wit: cocaine, in an amount, by aggregate
weight, of less than one (1) gram, including any adulterants and dilutants, and said
offense was committed in, on, and within 1,000 feet of premises owned by a
school, to-wit: the Guadalupe Center, owned by the San Angelo Independent
School District, and in pursuance of the agreement performed the following overt
acts: [a list of twenty-eight acts committed by appellant or a named co-conspirator]
. . . .



This indictment, while no model, alleged organized criminal activity under both theories of the
offense. First, the indictment alleged that appellant delivered less than one gram of cocaine with
the intent to participate in a combination. Second, by alleging that appellant and the named co-conspirators delivered less than one gram of cocaine, and that he and they performed overt acts
in pursuance of the agreement, the indictment effectively alleged that appellant conspired to
deliver less than one gram of cocaine with intent to participate in a combination.

Appellant urges that the indictment did not allege a conspiracy because it did not
contain the statutory phrase "conspires to commit." Appellant did not object to the indictment
and thereby waived any complaint regarding defects of form or substance. See Tex. Code Crim.
Proc. art. 1.14(b) (West Supp. 1999). If a charging instrument comes from the grand jury,
purports to allege an offense, and is facially an indictment, then it is an indictment for purposes
of article V, section 12(b) of the Texas Constitution. See Ex parte Gibson, 800 S.W.2d 548, 551
(Tex. Crim. App. 1990); Studer v. State, 799 S.W.2d 263, 272 (Tex. Crim. App. 1990).


The Evidence

For three months beginning in late December 1997, members of the Rio Concho
Drug Enforcement Task Force focused their attention on the intersection of 12th and Irving Streets
in San Angelo. Residents of the surrounding neighborhood had complained to the police that
drugs were being openly sold at this intersection, which was near a youth center owned and
operated by the public school district. While hiding themselves in a vacant house at the
intersection, task force members observed and videotaped the activities of several persons who
regularly gathered at the intersection. In addition, undercover officers made drug buys at the
intersection and uniformed officers, acting on information received from the surveillance officers,
conducted searches of both persons and places.

On December 31, 1997, the surveillance officers saw Earl Gray place a plastic bag
on the porch of the vacant house in which the officers were hiding. They reported this to a
uniformed officer, who came to the location and retrieved the bag. The bag contained rocks of
what appeared to be crack cocaine. That afternoon, Gray was seen placing something beside a
log in the yard of the vacant house. The uniformed officer was again summoned, and he found
by the log several rocks of suspected crack cocaine. Appellant and Johnny Wilson, Jr., were with
Gray on the latter occasion and the three men left together when the uniformed officer arrived. 
The rocks recovered by the uniformed officer on December 31 were submitted to the Department
of Public Safety laboratory and proven to contain cocaine.

That afternoon, undercover police officer Gene Fly and an unnamed informer drove
to the intersection and purchased two rocks of suspected crack cocaine from Curtis Ford for $40. 
They returned an hour later and bought two rocks from Earl Gray, also for $40. Both of these
transactions were witnessed by the surveillance officers. One of them testified that before making
the sale to Fly, Gray was standing with appellant, Johnny Wilson, Jr., and Marcus Stewart. The
rocks purchased by Fly and the informer on December 31 were also submitted to the laboratory
and shown to contain cocaine.

On January 9, 1998, the surveillance officers saw Bruce Pitts standing at the
intersection with appellant, Marquette Walker, and Earl Gray. Pitts placed an object wrapped in
plastic beside the fence surrounding the vacant house. The surveillance officers reported this to
a uniformed officer, whose arrival prompted appellant and his companions to leave together. The
object was recovered by the uniformed officer and proved to be a rock of crack cocaine. Later
that day, appellant was seen placing something under a piece of broken glass in the vacant lot at
one corner of the intersection. Minutes later, the uniformed officer arrived and found what was
confirmed by laboratory test to be a rock of crack cocaine. This is the only evidence directly
linking appellant with what was proven to be a controlled substance.

Fly and his informer made three visits to the intersection on January 9. On the first
visit, they purchased what Fly believed were rocks of crack cocaine from a juvenile. On the
second visit, they purchased suspected crack cocaine from Marquette Walker. Before this
transaction, Walker was seen by the surveillance officers standing with appellant, Johnny Wilson,
Jr., and Earl Gray. He returned to this group after the sale, and gave the money he received from
Fly to Wilson. On Fly's third visit to the intersection, he was approached in his car by appellant. 
Fly told appellant he needed "a couple of rocks" and appellant replied, "Well come on over
here." Not wanting to leave the car, Fly drove away and no transaction was accomplished. There
is no evidence that the rocks of suspected crack cocaine purchased by Fly on January 9 were
submitted to a laboratory for testing.

On January 19, Marcus Stewart and an unnamed companion were sitting in
Stewart's car, which was parked at 12th and Irving. Acting on information received from the
surveillance officers, uniformed officers came to the scene and conducted a "probable cause
search" of the car and its occupants. A rock of crack cocaine was found in the car. Insofar as
the evidence reflects, this was the last confirmed contraband to be seized by the officers.

The surveillance officers observed and videotaped many other suspected drug
transactions. Typically, one or more of the suspects would be standing together at the intersection
when a car would arrive. A suspect would approach the car, exchange what appeared to the
officers to be one or more rocks of crack cocaine for cash, and return to the group. On several
occasions, a suspect would reach into his pocket and withdraw what appeared to be rocks of crack
cocaine. The suspect would then count the rocks, and sometimes he would hand one or more
rocks to a companion. At other times, the suspects were seen counting or exchanging money. 
Appellant was a regular member of the group assembled at 12th and Irving, and he was seen on
several occasions holding or selling what the officers believed were rocks of crack cocaine. 
Except as indicated above, however, none of this suspected contraband was seized and tested.


Standard of Review

Appellant challenges both the legal and factual sufficiency of the evidence. 
Evidence is legally sufficient to support a criminal conviction if, when it is viewed in the light
most favorable to the verdict, a rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979); Geesa v. State,
820 S.W.2d 154 (Tex. Crim. App. 1991); Griffin v. State, 614 S.W.2d 155 (Tex. Crim. App.
1981). The evidence is not viewed in the light most favorable to the verdict in a factual
sufficiency review. Instead, all the evidence is considered equally, including the testimony of
defense witnesses and the existence of alternative hypotheses. Orona v. State, 836 S.W.2d 319,
321 (Tex. App.--Austin 1992, no pet.). A verdict will be set aside for factual insufficiency if it
is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. 
Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); Stone v. State, 823 S.W.2d 375,
381 (Tex. App.--Austin 1992, pet. ref'd as untimely filed).

Even though trial was to the court, we measure the sufficiency of the evidence by
the elements of the offense "as defined by the hypothetically correct jury charge for the case." 
Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge "accurately sets
out the law, is authorized by the indictment, does not unnecessarily increase the State's burden
of proof or unnecessarily restrict the State's theories of liability, and adequately describes the
particular offense for which the defendant was tried." Id. A hypothetically correct jury charge
in this cause would authorize appellant's conviction for delivering or conspiring to deliver less
than one gram of cocaine with intent to participate in a combination.

Delivery of Cocaine

As discussed above, appellant was seen by police officers making what appeared
to be sales of crack cocaine, but the suspected contraband was not recovered and tested. Although
the task force members who witnessed these suspected drug sales were trained and experienced
narcotics officers, there is no evidence that they were capable of accurately identifying crack
cocaine merely by seeing it at a distance. See Curtis v. State, 548 S.W.2d 57, 59 (Tex. Crim.
App. 1977) (narcotics officer's opinion that substance was heroin was not sufficient to establish
that fact at probation revocation hearing). Even when viewed in the light most favorable to the
verdict, the evidence does not rationally support a finding beyond a reasonable doubt that
appellant personally delivered cocaine. The evidence is legally insufficient to sustain appellant's
conviction on this theory of the offense.


Conspiracy to Deliver Cocaine

To prove the conspiracy allegation, the State was required to show (1) that
appellant agreed with one or more persons that one or more of them would deliver less than one
gram of cocaine, (2) that appellant performed an overt act in pursuance of the agreement, and (3)
that one or more of the co-conspirators also performed an overt act in pursuance of the agreement. 
See Fee v. State, 841 S.W.2d 392, 395 (Tex. Crim. App. 1992); Penal Code § 71.01(b). The
agreement may be inferred from the acts of the parties. Sec. 71.01(b).

The evidence shows that appellant and the alleged co-conspirators regularly
gathered at 12th and Irving, often coming and going together. While at the intersection, they
engaged in conversation and openly displayed among themselves both suspected crack cocaine and
quantities of cash. On December 12, Earl Gray sold two rocks of crack cocaine to an undercover
officer. Appellant, Johnny Wilson, Jr., and Marcus Stewart were present when the sale was
made. On January 9, Marquette Walker sold crack cocaine to the undercover officer. Walker
was seen standing with appellant, Wilson, and Gray before making this sale, and returned to this
group after the transaction was completed. Walker gave the money he received from the officer
to Wilson. Later that same day, appellant responded to the undercover officer's stated desire to
purchase more cocaine by telling him to "come on over here," an apparent reference to the group
of men gathered nearby. Appellant, Gray, and another of the intersection regulars, Bruce Pitts,
also were observed attempting to hide rocks of crack cocaine at various locations near the
intersection. The trier of fact could reasonably infer that they did so not only to avoid being
found in possession of the contraband, but also to facilitate future sales by themselves or other
members of the group.

Viewing this evidence in the light most favorable to the verdict, a rational trier of
fact could infer that appellant and his companions had agreed among themselves to deliver cocaine
at 12th and Irving. Further, the fact finder could reasonably conclude that appellant performed
an overt act in furtherance of the agreement by hiding crack cocaine near the intersection, and that
Gray and Walker performed overt acts by selling cocaine to the undercover officer. The evidence
is legally sufficient to sustain a finding beyond a reasonable doubt that appellant conspired to
deliver cocaine.


Intent to Participate in a Combination

A "combination" within the meaning of section 71.01(a) requires three or more
persons working together in a continuing course of criminal activities. See Nguyen v. State, 977
S.W.2d 450, 454-55 (Tex. App.--Austin 1998), aff'd, ___ S.W.2d ___ (Tex. Crim. App. Sept.
23, 1999). The intent to participate in a combination may be inferred from circumstantial
evidence. See id.

The evidence previously cited as proof of the conspiratorial agreement also
evidences appellant's intent to participate in an unlawful combination. Contrary to appellant's
argument, this evidence shows more than appellant's mere presence at the time cocaine was sold
by others. Appellant was shown to be a regular member of the group of individuals that
habitually gathered at 12th and Irving. Any viewer of the videotapes could infer that these
persons were acquainted with each other and were on friendly terms. Two members of the group
sold crack cocaine to an undercover officer. Three group members, including appellant, hid
cocaine at the intersection. Members of the group, including appellant, were seen exchanging
money and what appeared to be crack cocaine. From this evidence, a rational trier of fact could
conclude beyond a reasonable doubt that appellant and his companions were working
cooperatively in a continuing course of cocaine sales. See Bolden v. State, 923 S.W.2d 730, 733
(Tex. App.--Tyler 1996, no pet.). The evidence is legally sufficient to support the finding that
appellant acted with the intent to participate in a combination.


Factual Sufficiency

Appellant does not identify any evidence that is contrary to the finding of guilt, but
instead asks this Court to reweigh the evidence adduced by the State. We may not, however, set
aside a finding of guilt merely because we feel that a different result is more reasonable. Clewis,
922 S.W.2d at 135; Reina v. State, 940 S.W.2d 770, 773 (Tex. App.--Austin 1997, pet. ref'd). 
When conducting a factual sufficiency review, we must maintain appropriate deference to the fact-finder at trial. Reina, 940 S.W.2d at 773. It cannot be said that the jury's verdict is so contrary
to the great weight of the evidence as to be clearly wrong and unjust.


Punishment

Commission of an offense with the intent to participate in a criminal combination
is punishable at next the next higher punishment category than applies to offense committed. Tex.
Penal Code Ann § 71.02(b) (West 1994). Conspiring to commit an offense with the intent to
participate in a criminal combination is punishable to the same degree as the most serious offense
the defendant conspired to commit. See id. § 71.02(c).

Ordinarily, delivery of less than one gram of cocaine is a state jail felony. See Tex.
Health & Safety Code Ann. § 481.112(b) (West Supp. 1999). The offense becomes a third degree
felony when committed within one thousand feet of real property owned by a school. See id.
§ 481.134(d). It is undisputed that the intersection of 12th and Irving was within such a drug-free
zone. Thus, delivering less than one gram of cocaine in a drug-free zone with the intent to
participate in a combination is a second degree felony, while conspiring to commit the offense
with such intent is a third degree felony.

Appellant was indicted under both theories of the offense. The district court's
judgment states that appellant was convicted of a second degree felony, which implies a finding
that he delivered cocaine. We have held, however, that the evidence is legally insufficient to
sustain such a finding. Instead, the evidence supports a conviction only for conspiring to deliver
cocaine, a third degree felony under the circumstances of this case. Although the punishment
assessed is within that prescribed for a third degree felony, we will not assume that the court
would have assessed the same punishment had it considered the correct punishment range. 
Therefore, we will remand the cause to the district court for reassessment of punishment. See
Wahl v. State, 693 S.W.2d 942, 944 & n.2 (Tex. Crim. App. 1985).

Appellant's challenge to the legal sufficiency of the evidence is sustained insofar
as the district court adjudged him guilty on a finding that he delivered cocaine, but otherwise is
overruled. Appellant's challenge to the factual sufficiency of the evidence is also overruled. The
district court's judgment is modified to reflect a conviction for a third degree felony and, so
modified, affirmed as to the finding of guilt. That portion of the judgment imposing sentence is
reversed and the cause is remanded for reassessment of punishment.



 

 Mack Kidd, Justice

Before Chief Justice Aboussie, Justices Kidd and Patterson

Modified and, as Modified, Affirmed in Part; Reversed and Remanded in Part

Filed: October 14, 1999

Do Not Publish



beyond a reasonable doubt that appellant and his companions were working
cooperatively in a continuing course of cocaine sales. See Bolden v. State, 923 S.W.2d 730, 733
(Tex. App.--Tyler 1996, no pet.). The evidence is legally sufficient to support the finding that
appellant acted with the intent to participate in a combination.


Factual Sufficiency

Appellant does not identify any evidence that is contrary to the finding of guilt, but
instead asks this Court to reweigh the evidence adduced by the State. We may not, however, set
aside a finding of guilt merely because we feel that a different result is more reasonable. Clewis,
922 S.W.2d at 135; Reina v. State, 940 S.W.2d 770, 773 (Tex. App.--Austin 1997, pet. ref'd). 
When conducting a factual sufficiency review, we must maintain appropriate deference to the fact-finder at trial. Reina, 940 S.W.2d at 773. It cannot be said that the jury's verdict is so contrary
to the great weight of the evidence as to be clearly wrong and unjust.


Punishment

Commission of an offense with the intent to participate in a criminal combination
is punishable at next the next higher punishment category than applies to offense committed. Tex.
Penal Code Ann § 71.02(b) (West 1994). Conspiring to commit an offense with the intent to
participate in a criminal combination is punishable to the same degree as the