NO. 12-01-00303-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


GUADALUPE PINALES,
§
 APPEAL FROM THE 59TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 GRAYSON COUNTY, TEXAS

 

 Guadalupe Pinales ("Appellant") appeals her conviction for possession of marijuana, for
which she was sentenced to confinement for two years, probated for five years, and fined four
hundred dollars. Appellant raises four issues on appeal. We affirm.


Background

 Based on information provided by a confidential informant, law enforcement obtained and
executed a search warrant for a house in which the Pinales family resided. Multiple law enforcement
officers executed the warrant on the evening of April 23, 1997. During the conduct of their search,
officers discovered marijuana in Appellant's son's bedroom. The officers discovered additional
marijuana in a compartment in the wall of the master bedroom, occupied by Appellant and Frank
Pinales, Sr. The quantity of marijuana retrieved from within the wall of the master bedroom was
approximately 1.6 pounds.

 Appellant was indicted for possession of more than four ounces, but less than five pounds
of marijuana. (1) Appellant pleaded "not guilty," and the matter proceeded to voir dire. During voir
dire, the State of Texas (the "State") exercised peremptory challenges against certain members of
the venire. At the conclusion of voir dire, Appellant, who is of Hispanic descent, raised a Batson (2)
challenge as to the State's peremptory strikes against Gladis Bowen ("Bowen"), who is of African
American descent, Jimmy Thompson ("Thompson"), who is of Hispanic descent, and Maria
Gutierrez ("Gutierrez"), also of Hispanic descent. The State responded with purportedly race-neutral
explanations for these three peremptory strikes. As to Bowen, the State explained that it had
exercised a strike against her because she had a relative in prison and because she had not been
forthcoming concerning her conviction for theft by check when questioned by the State. With regard
to Thompson, the State explained that it exercised a peremptory strike against him because of his
profession, a truck driver, and the way in which he was dressed, which the State described as "blue
collarish." Finally, in explaining its reasons for striking Gutierrez, the State claimed that it struck
her because she indicated that she had a cousin that was convicted of a drug offense. Appellant
responded that the State had failed to strike other members of the venire for similar reasons,
including one who had family members who had been convicted on drug-related charges, and
another, who was a painter, a profession Appellant argued was a "blue collar" profession. The State
responded that it did not have enough peremptory challenges to strike these other members of the
venire. At the conclusion of the hearing, the trial court overruled Appellant's Batson challenge, and
the trial of the case commenced.

 Following the presentation of evidence, the trial court asked the parties if they had any
objections concerning the court's charge. Appellant stated that she had no objection, but requested
an instruction that "[t]here must be independent facts and circumstances which affirmatively link the
defendant to the marijuana in such a manner it can be concluded she had knowledge of the
marijuana, as well as control over it." The trial court denied Appellant's request. Ultimately, the
jury found Appellant guilty as charged and the trial court sentenced Appellant to confinement for two
years, probated for five years, and fined Appellant four hundred dollars.


Batson Challenge

 In order to establish a prima facie case of racial discrimination, three things must be shown:
(1) Appellant is a member of a cognizable racial group; (2) the State used peremptory challenges to
remove members of a minority group from the jury; and (3) these facts, and any other relevant
circumstances, raise an inference that the prosecutor excluded the venirepersons from the venire
because of their race. See Batson v. Kentucky, 476 U.S. at 96, 106 S. Ct. at 1723; Henry v. State,
729 S.W.2d 732, 734 (Tex. Crim. App. 1987). When the trial court determines that the appellant
has made a prima facie Batson case, the burden shifts to the prosecutor to come forward with race
neutral reasons for the peremptory strikes. See Keeton v. State, 749 S.W.2d 861, 867-68 (Tex. Crim.
App. 1988); Shears v. State, 895 S.W.2d 456, 461 (Tex. App.-Tyler 1995, no pet.). The explanation
the State gives justifying the strike does not have to rise to the level of a challenge for cause, but it
must be a clear, specific, and legitimate explanation for each relevant challenge. See Brooks v.
State, 802 S.W.2d 692, 695 (Tex. Crim. App. 1991). A reviewing court is not to concern itself with
who served on the jury, but whether the State was racially motivated in using a peremptory challenge
against even one venire member of discernible race. See Linscomb v. State, 829 S.W.2d 164, 167
(Tex. Crim. App. 1992). The trial judge cannot merely accept the specific reasons given by the
prosecutor at face value, but must consider whether the prosecutor contrived the racially neutral
explanations to avoid admitting acts of discrimination. See Dennis v. State, 925 S.W.2d 32, 39-40
(Tex. App.-Tyler 1995, pet. ref'd). Once the prosecutor gives a racially neutral explanation that can
legally support a judgment in the State's favor, he presents a fact issue that the trial judge can resolve
only by assessing the weight and credibility of the evidence. Id. at 40. The defendant bears the
ultimate burden of proving that the prosecutor exercised the State's peremptory strikes in a
discriminatory fashion. Id. 

 The standard of review of a trial court's decision and finding as to whether a reason given
by a prosecutor is sufficiently race neutral is reviewable by a "clearly erroneous" standard. See
Tennard v. State, 802 S.W.2d 678, 681 (Tex. Crim. App. 1990); Dennis, 925 S.W.2d at 39. Thus,
the reviewing court should afford great deference to the findings of the trial court. See Robinson
v. State, 851 S.W.2d 216, 226 (Tex. Crim. App. 1991); Shears, 895 S.W.2d at 461. The record of
both the voir dire and hearing will be reviewed in a light most favorable to the trial court's ruling. 
See Adanandus v. State, 866 S.W.2d 210, 224 (Tex. Crim. App. 1993). In Keeton, the court of
criminal appeals discussed the following nonexclusive list of factors which weigh against the
legitimacy of a race-neutral explanation: (1) the prosecutor's reason for the peremptory challenge
is not related to the facts of the case; (2) there was a lack of questioning to the challenged juror or
a lack of meaningful questions; (3) there was disparate treatment in that persons with the same or
similar characteristics were not struck; (4) there was disparate examination in that a challenged juror
was questioned so as to evoke a certain response whereas other panel members were not asked the
same question; and (5) the prosecutor gives an explanation based on a group bias where the group
trait is not shown to apply specifically to the challenged juror. See Keeton, 741 S.W.2d at 868. 
These factors tend to show that the reasons or explanations given by a prosecutor are merely a sham
or a pretext. See Emerson v. State, 851 S.W.2d 269, 273 (Tex. Crim. App.1993); Keeton, 749
S.W.2d at 868. 

 The parties do not dispute the issue of whether Appellant made a prima facie case of racial
discrimination. Thus, shifting our focus to the prosecutor's burden, we conclude that the State
offered a sufficiently race-neutral explanation for each of its peremptory strikes. See Gerber v. State,
845 S.W.2d 460, 464-65 (Tex. App.-Houston [1st Dist.] 1993, pet. ref'd) (striking a juror due to the
manner of their dress or appearance provides a race-neutral explanation); Holman v. State, 772
S.W.2d 530, 533 (Tex. App.-Beaumont 1989, no pet.) (failure to reveal criminal history is a race-neutral reason for exercising a peremptory strike); Bolden v. State, 923 S.W.2d 730, 734 (Tex.
App.-Tyler 1996, no pet.) (a venire member's prior criminal conviction is a race-neutral reason for
exercising a peremptory strike). Appellant argues that multiple Keeton factors indicate that the
State's purportedly race-neutral reasons were a mere pretext. We disagree.

 First, Appellant argues that there was a distinct lack of questioning as to Gutierrez and
Thompson. However, while the State's reasons for striking these venire members would be
bolstered had it individually questioned each of them, the State's reasons for its strikes are not
rendered racially impermissible simply because the State failed to so question them. See Vargas v.
State, 838 S.W.2d 552, 556 (Tex. Crim. App. 1992).

 Further, Appellant argues that, with respect to Thompson, the State failed to demonstrate that
Thompson exhibited the "blue collarish" group trait, which the State used as a reason for striking
him. However, Appellant overlooks the State's contention that it also exercised a peremptory strike
against Thompson based on his appearance and manner of dress. When the State offers numerous
race-neutral reasons for challenging a potential juror, the fact that other jurors possessed one or more
of the objectionable attributes is not sufficient to establish disparate treatment. See Cantu v. State,
842 S.W.2d 667, 689 (Tex. Crim. App. 1992). As set forth above, striking a juror due to the manner
of their dress or appearance provides a race-neutral explanation. See Gerber, 845 S.W.2d at 464-65. 
Similarly, as to Bowen, while Appellant cites to disparate treatment related to other jurors who, like
Bowen, claimed to have relatives with convictions, Appellant offers no argument related to the
State's explanation that it also struck Bowen because she was not forthcoming regarding her
previous conviction for theft by check. See Holman, 772 S.W.2d at 533. 

 Finally, Appellant argues that there was disparate treatment in that the State exercised a
peremptory strike against Gutierrez based on the fact that she had a relative who had been convicted,
while other venire members with the same or similar characteristics were not struck. However,
Appellant did not cross-examine the prosecutor under oath or impeach her as to the underlying
reasons for her failure to challenge other members of the venire on this basis. Furthermore, although
Appellant indicated to the trial judge the names of other venire members who were not struck, there
is no evidence in the record upon which we can determine the respective races of these venire
members. See Shields v. State, 820 S.W.2d 831, 834 (Tex. App.-Waco 1991, no pet.). 

 Facts necessary to show the existence or absence of disparate treatment (showing that the
prosecution did or did not strike jurors with characteristics similar to the challenged juror) cannot
be merely recited into the record as evidence through unsworn statements. Id. at 833. Counsel who
want the record to reflect certain facts must include those facts in the record as evidence either by
sworn testimony, exhibits, stipulations, admissions or judicial notice. Id. The most elaborately
constructed, fact-based argument on appeal is for naught unless it is supported by evidence in the
record. Id. As we have no evidence before us to enable us to determine the race of venire members
who were not struck who possessed similar characteristics to Gutierrez, we cannot determine
whether she suffered disparate treatment.

 If the district court's account of the evidence is plausible in light of the record viewed in its
entirety, we may not reverse it even if we, sitting as the trier of fact, might have weighed the
evidence differently. See Vargas, 838 S.W.2d at 556.   Where there are two permissible views of
the evidence, the fact-finder's choice between them cannot be clearly erroneous. Id. Here, the trial
court found the State's explanations to be race-neutral, and based our review of the record, the
evidence does not suggest otherwise. As such, we hold that the trial court did not err in overruling
Appellant's Batson challenge. Appellant's first issue is overruled.


Legal Sufficiency

 In his second issue, Appellant contends that the evidence was not legally sufficient to support
the jury's verdict. Specifically, Appellant argues that there was no evidence to support the jury's
finding that she possessed the marijuana in question. Legal sufficiency is the constitutional
minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal
conviction. See Jackson v. Virginia, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d
560 (1979); see also Escobedo v. State, 6 S.W.3d 1, 6 (Tex. App.-San Antonio 1999, no pet.). The
standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. See Jackson, 443 U.S. at
320, 99 S. Ct. at 2789; see also Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). 
The evidence is examined in the light most favorable to the jury's verdict. See Jackson, 443 U.S.
at 320, 99 S. Ct. at 2789; Johnson, 871 S.W.2d at 186. A successful legal sufficiency challenge will
result in rendition of an acquittal by the reviewing court. See Tibbs v. Florida, 457 U.S. 31, 41-42,
102 S. Ct. 2211, 2217-18, 72 L. Ed. 2d 652 (1982).

 A person commits the offense of possession of marijuana if he knowingly or intentionally
possesses a usable quantity of marijuana. See Tex. Health & Safety Code § 481.121(a). To
prove unlawful possession of a controlled substance, the state must show that the defendant (1)
exercised care, control, and management over the controlled substance and (2) knew that it was a
controlled substance. See Humason v. State, 728 S.W.2d 363, 364 (Tex. Crim. App. 1987),
overruled on other grounds, Geesa v. State, 820 S.W.2d 154, 157 (Tex. Crim. App. 1991), overruled
on other grounds, Paulson v. State, 28 S.W.3d 570, 473 (Tex. Crim. App. 2000). Mere presence
in the vicinity of a controlled substance is not enough. Id. at 365. The State must prove an
affirmative link between the defendant and the drug. See McGoldrick v. State, 682 S.W.2d 573, 578
(Tex. Crim. App. 1985). Possession need not be exclusive, however, and a showing of joint
possession with another is sufficient. See Siroky v. State, 653 S.W.2d 476, 479 (Tex. App.-Tyler
1983, pet. ref'd). Whether the possession of the accused is sole or joint, still an affirmative link must
be established between the accused and the controlled substance by proof of other independent facts
and circumstances, and such affirmative link may be established by circumstantial evidence. Id. 
Moreover, when the narcotics are secreted, the State must address whether the defendant knew of
the existence of the secret place and its contents. See Vargas v. State, 883 S.W.2d 256, 263 (Tex.
App.-Corpus Christi 1994, pet. ref'd). 

 Circumstances that may link a defendant to the controlled substance exist where (1) the
defendant was present when the search was executed; (2) the contraband was in plain view; (3) the
contraband is in close proximity to and accessible by the defendant; (4) the defendant was under the
influence of contraband; (5) the defendant was in possession of other contraband when he was
arrested; (6) the defendant made incriminating statements when he was arrested; (7) the defendant
attempted to flee; (8) the defendant made furtive gestures; (9) there was an odor of the contraband
present at the scene; (10) other contraband or drug paraphernalia were present which were not
included in the charge; (11) the defendant owned or had a right to possess the place where the
controlled substance was found; (12) the contraband was found in an enclosed place; (13) there was
a significant amount of contraband; and (14) the defendant possessed weapons or large amounts of
cash. See De La Garza v. State, 898 S.W.2d 376, 379 (Tex. App.-San Antonio 1995, no pet.);
Hernandez v. State, 867 S.W.2d 900, 904 (Tex. App.-Texarkana 1993, no pet.); Castillo v. State,
867 S.W.2d 817, 820 (Tex. App.-Dallas 1993), vacated & remanded on other grounds, 913 S.W.2d
529 (Tex. Crim. App.1995). Furthermore, the fact that the appellant resides at the location where
the contraband is found and the fact that she is closely related to a person in joint possession of the
contraband is enough to link her to the possession thereof. See Sanchez v. State, 825 S.W.2d 761,
765 (Tex. App.-Houston [14th Dist.] 1992, no pet.). The number of affirmative links present is not
as important as the degree to which they tend to link the defendant to the controlled substance.
Williams v. State, 906 S.W.2d 58, 65 (Tex. App.-Tyler 1995, pet. ref'd). (3)

 Considering the aforementioned factors with regard to the facts in the instant case, we
conclude that they are of sufficient quality to link Appellant to the marijuana in question. The
evidence is uncontested that Appellant was present in the residence when the search was executed. 
The record further reflects that the enclosed space where the marijuana was discovered was easily
accessible to Appellant through a hole in her bedroom wall, which was covered only by a broken-out
piece of wall paneling. Furthermore, the amount of marijuana discovered in Appellant's bedroom
was significant, approximately 1.6 pounds. Moreover, the record reflects that Appellant resided in
the place where the marijuana was discovered, was the wife of Frank Pinales, Sr., and was the
mother of Frank Pinales Jr., both of whom were present at the time of the search and were arrested
and charged with an offense related thereto. See Sanchez, 825 S.W.2d at 765. Finally, the record
reflects that Appellant was present in the house during the drug transaction between her son and the
confidential informant. Viewing all of the evidence in the light most favorable to the verdict, we
conclude that the jury, as the trier of fact, could find beyond a reasonable doubt that Appellant
exercised care, control, and management over the 1.6 pounds of marijuana in question, was aware
of its existence within her bedroom wall, and was aware that it was contraband. Thus, we hold that
the evidence is legally sufficient to support Appellant's conviction. Appellant's second issue is
overruled.

 

Factual Sufficiency

 In his third issue, Appellant contends that the evidence was so contrary to the jury's verdict
as to be clearly wrong and unjust. In considering the issue of factual sufficiency, we first assume that
the evidence is legally sufficient under the Jackson standard. See Clewis v. State, 922 S.W.2d 126,
134 (Tex. Crim. App. 1996). We then consider all of the evidence in the record related to
Appellant's sufficiency challenge, not just the evidence which supports the verdict. Id. We review
the evidence weighed by the jury which tends to prove the existence of the fact in dispute, and
compare it to the evidence which tends to disprove that fact. See Santellan v. State, 939 S.W.2d
155, 164 (Tex. Crim. App. 1997). We may disagree with the jury's determination, even if probative
evidence exists which supports the verdict. See Clewis, 922 S.W.2d at 133. However, our
evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and
credibility of witness testimony. See Santellan, 939 S.W.2d at 164. Where there is conflicting
evidence, the jury's verdict on such matters is generally regarded as conclusive. See VanZandt v.
State, 932 S.W.2d 88, 96 (Tex. App.-El Paso 1996, pet. ref'd). Ultimately, we must ask whether
a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of
guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of
guilt, although adequate if taken alone, is greatly outweighed by contrary proof. Johnson v. State,
23 S.W.3d 1, 11 (Tex. Crim. App. 2000). A verdict will be set aside only if a finding of guilt beyond
a reasonable doubt is clearly wrong and unjust. See Clewis, 922 S.W.2d at 134. 

 Here, Appellant argues that the jury's verdict is clearly wrong and unjust because other
factors of the possession analysis as set forth above do not tend to link Appellant to the marijuana
in question. Specifically, Appellant notes that (1) there were other adults present in the small, two-bedroom residence, (2) the marijuana was discovered in a wall compartment that was not readily
visible, (4) (3) Appellant was not in the bedroom at the time that the search warrant was executed, (5) and
(4) other items of contraband were discovered in Frank Pinales, Jr.'s bedroom. We disagree that the
quality of these factors, when weighed against the other factors and the record as a whole, tend to
demonstrate that the jury's verdict was clearly wrong and unjust. We iterate that the number of
affirmative links present is not as important as the degree to which they tend to link the defendant
to the controlled substance. See Williams, 906 S.W.2d at 65. Our review of the record does not
uncover any great weight of evidence contradicting the quality of evidence linking Appellant to the
1.6 pounds of marijuana found in her bedroom, nor does the jury's verdict otherwise shock the
conscience of this court. As such, we hold that the evidence of possession was factually sufficient
to support the jury's verdict. Appellant's third issue is overruled.


Charge Instruction on "Possession"

 In his fourth issue, Appellant argues that the trial court erred in failing to include an
appropriate instruction within the charge to apply the law of possession to the facts of the instant
case. Appellant requested that the trial court include an instruction in the charge that "[t]here must
be independent facts and circumstances which affirmatively link the defendant to the marijuana in
such a manner it can be concluded she had knowledge of the marijuana, as well as control over it." 
Appellant's request was denied by the trial court. Failure to give an affirmative charge regarding
knowledge is reversible error. See Troyer v. State, 516 S.W.2d 163, 164 (Tex. Crim. App. 1974). 

 In the instant case, the court's charge instructed the jury that "a person commits a felony
offense if he/she intentionally or knowingly possesses a usable quantity of marijuana." The charge
further instructed the jury that "possession" is "the actual care, custody, control or management of
the marijuana . . . ." Moreover, the charge instructed the jury that "a person acts intentionally or with
intent . . . when it is his conscious objective or desire to engage in the conduct or cause the result"
and that "[a] person acts knowingly or with knowledge with respect to the nature of his conduct or
to circumstances surrounding his conduct when he is aware that his conduct is reasonably certain to
cause the result." Finally, the charge instructed the jury that "[i]ntent or knowledge may be inferred
by acts done or words spoken." We conclude that the court's charge properly instructed the jury as
to the law applicable to the case at hand. The language requested by Appellant, if included, would
have been redundant of the instructions already provided in the charge, and was, therefore, properly
refused by the trial judge. Appellant's fourth issue is overruled.

 Accordingly, the judgment of the trial court is affirmed.


 SAM GRIFFITH 

 Justice

Opinion delivered August 30, 2002.

Panel consisted of Gohmert, Jr., C.J., Worthen, J., and Griffith, J.


(DO NOT PUBLISH)
1. See Tex. Health & Safety Code Ann. § 481.121(a) (Vernon Supp. 2002).
2. Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).
3. Citing McCarty v. State, 788 S.W.2d 213, 215 (Tex. App.-Fort Worth 1990, no pet.), Appellant argues
that the State also has the burden to exclude all alternative reasonable hypotheses beyond a reasonable doubt. 
However, this rule as set forth in McCarty, has been since rejected by the court of criminal appeals. See Geesa v.
State, 820 S.W.2d at 161, overruled on other grounds, Paulson v. State, 28 S.W.3d at 473; see also Bethancourt-Rosales v. State, 50 S.W.3d 650, 653 n. 1 (Tex. App.-Waco 2001, pet. ref'd).
4. While the record reflects that the compartment within the wall was not readily visible, the evidence further
shows that the breach in the wall was covered only by a broken-out piece of wall paneling.
5. Appellant has provided no record cite for this statement of fact. Our review of the record uncovers no
evidence that Appellant was not in the master bedroom during the execution of the search warrant. The testimony of
the officers executing the search warrant reflected that they had no memory of the location of Appellant at that time. 
The undisputed evidence indicates that Appellant was present in the residence, which, as Appellant points out in her
brief, was a small two bedroom house, at the time the search warrant was executed.