**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-14-00519-CR**
**NO. 09-14-00520-CR**

_____

**EX PARTE TEDDY BERRY, Appellant**

_____

**On Appeal from the 252nd District Court**
**Jefferson County, Texas**
**Trial Cause Nos. 14-20471, 14-20474**

_____

**MEMORANDUM OPINION**

Appellant Teddy Berry appeals from the trial court's denial of relief on his pretrial applications for writ of habeas corpus seeking a bond reduction in two cases. In two issues, Berry contends that the bond set in each case is excessive and oppressive in violation of the Eighth and Fourteenth Amendments to the United States Constitution; article I, sections 11, 13, and 19 of the Texas Constitution; and articles 1.09 and 17.15 of the Texas Code of Criminal Procedure. We affirm the trial court's orders denying habeas relief.

## I.  Background

Berry was charged by two indictments with the offense of aggravated robbery. Bail in each case was initially set at "no bond." On September 24, 2014, Berry filed an application for writ of habeas corpus in each case, asking the trial court to set reasonable bail for the charged offenses.

On September 29, 2014, the trial court conducted a hearing on Berry's applications for writ of habeas corpus. Berry presented testimony from three witnesses at the hearing. First, Berry's fiancé testified that she and Berry reside in Little Rock, Arkansas. She testified that Berry manages a powder coating business in Arkansas and that Berry is the family's main provider. She testified that she would personally bring Berry to court whenever he had a court appearance.

Berry's daughter also testified at the hearing. His daughter testified that she lives in Arkansas and is currently a stay-at-home mother. She stated that she has a good relationship with her father, and when asked what assurances she could provide to the court that Berry would show up for court appearances if released on bond, she testified that she would "have to get him here."

Berry also called his older brother as a witness at the hearing. His brother testified that he has resided in Jefferson County since 1979 and currently lives in Port Arthur, Texas, where he owns a remodeling company. He testified that if

Berry was released on bond, he would allow Berry to stay with him at his home in Port Arthur whenever he needed. In addition, he testified that since he would "have to put up some of the money" and "some property" to secure any bond set by the trial court, he would ensure that Berry would show up for his court appearances because he did not want to lose anything he put up as collateral for the bond.

In addition to the testimony of the three witnesses, Berry presented evidence at the hearing showing that he had served in the United States Air Force for over three years and was honorably discharged in 1983. Further, in response to an inquiry from the trial court about Berry's criminal record, Berry's counsel informed the trial court that Berry had previously been convicted for misdemeanor theft in Arkansas. The State confirmed that its records for Berry showed a prior arrest for theft of property, but stated that it was unaware of the disposition of that charge. It was also undisputed at the hearing that Berry was in Louisiana at the time he was arrested for the charged offenses.

At the conclusion of the hearing, the trial court set bail at $150,000 in each case. As a condition of bail, the trial court required that a GPS monitor be installed on Berry's ankle.

On October 14, 2014, Berry posted bond in both cases in the aggregate amount of $300,000. On October 24, 2014, the State filed a motion to increase and

modify the conditions of bond in both cases. In its motions, the State alleged that "new information" warranted an increase in Berry's appearance bonds. Specifically, the State alleged that on September 9, 2014, while Berry was in jail for the charged offenses, Berry made a threat against the complaining witnesses during a recorded telephone conversation with a third party. On October 24, 2014, the trial court, without a hearing, increased bail in each case to $500,000, and a warrant was issued for Berry's arrest based on the increased bond amounts.

On November 7, 2014, Berry filed a second application for writ of habeas corpus in each case. In both applications, Berry argued that the increased bond amounts were excessive, oppressive, beyond his financial means, and in violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution; article 1, sections 11, 13, and 19 of the Texas Constitution; and articles 1.09 and 17.15 of the Texas Code of Criminal Procedure. Berry also argued that the trial court erred by increasing bail in each case based solely on the State's allegation that Berry had made a threat against the complaining witnesses. Specifically, Berry argued that the State possessed a police report and an audio recording containing information regarding the alleged threat when the first habeas hearing took place, but that the State failed to disclose this information to the trial court at that time. Berry argued that because the State did not disclose this

4

information to the trial court when it set his bonds at the first habeas hearing, the information could not properly form the basis for a subsequent bail increase.

On November 10, 2014, the trial court conducted a hearing on Berry's applications. At the hearing, the trial court, at the request of Berry's counsel, took judicial notice of the bond history contained in the court's file and the evidence presented during the September 29, 2014 hearing. Thereafter, Berry presented one witness, Keith Day. Day testified that he is a bail bondsman and that he posted the two $150,000 bonds for Berry on October 14, 2014. He testified that Berry made a $10,000 down payment in order to secure Day's services for those bonds. Day testified that he required Berry to check in with his bonding company twice per week and to notify Day's company of any changes in Berry's address, phone number, or employment or if he was rearrested. Day also testified that he required Berry to wear an electronic ankle monitor and that the ankle monitor was programmed to notify the monitoring facility if Berry came within ten miles of the complaining witnesses' residence. Day testified that during the time period that Berry was released on the two $150,000 bonds, Berry did not violate the requirements imposed by Day and, to the best of his knowledge, Berry did not go within ten miles of the complaining witnesses' residence. Day further testified that Berry was aware that there was a warrant issued for his arrest based on the

5

increased bond amounts, yet Berry voluntarily appeared in court for the second habeas hearing.

At the conclusion of the hearing, the trial court denied Berry's requested relief and ordered that bail remain at $500,000 in each case. Berry timely filed this appeal.

## II.    Increase in Bail

Berry's brief on appeal challenges the trial court's decision to increase bail and its subsequent denial of his request for a reduction in bail. We first address Berry's argument that the trial court erred in increasing his bail from $150,000 to $500,000 in each case.

Article 17.09 of the Texas Code of Criminal Procedure provides that once a defendant has "given bail for his appearance in answer to a criminal charge, he shall not be required to give another bond in the course of the same criminal action[.]" Tex. Code Crim. Proc. Ann. art. 17.09, § 2 (West 2015).  However, as an exception to this rule, article 17.09 provides that "whenever, during the course of the action, the judge or magistrate in whose court such action is pending finds that the bond is defective, excessive or insufficient in amount, or that the sureties, if any, are not acceptable, or for any other good and sufficient cause," the judge or magistrate may "require the accused to give another bond in such amount as the

6

judge or magistrate may deem proper." *Id*. art. 17.09, § 3; *see also Ex parte Wood*, 308 S.W.3d 550, 553 (Tex. App.—Beaumont 2010, no pet.). "No precise standard exists for determining what constitutes 'good and sufficient cause' under [a]rticle 17.09." *Miller v. State*, 855 S.W.2d 92, 93-94 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd). Therefore, each case must be reviewed on a case-by-case basis. *Id*. at 94. Because the trial court has considerable discretion under article 17.09 to increase bail, we will not disturb its decision unless we find that the trial court has abused its discretion. *Id*. at 93.

As part of his first issue, Berry argues that the trial court erred by granting the State's motion to increase bond and raising his bail to $500,000 in each case because the State did not establish that Berry made a threat against the complaining witnesses. Essentially, Berry argues that the State's allegation that Berry made a threat against the complaining witnesses was insufficient, by itself, to support an increase in bail and that it was an abuse of discretion for the trial court to increase his bonds without evidence of the alleged threat. Berry, however, did not argue, either in his second application for writ of habeas corpus or at the second habeas hearing, that the State failed to present evidence of the alleged threat in support of its motion to increase bail or that the trial court abused its discretion by increasing his bail without this evidence. He also did not argue that the State failed to show

7

"good and sufficient cause" to increase bail under article 17.09. By failing to include these grounds in his second application for writ of habeas corpus or in his arguments to the trial court at the second habeas hearing, Berry failed to preserve these arguments for our review. *See* Tex. R. App. P. 33.1(a); *Hughes v. State*, 16 S.W.3d 429, 431 (Tex. App.—Waco 2000, no pet.) (finding that appellant waived argument regarding collateral estoppel for purposes of appeal by failing to present it in his application for writ of habeas corpus or in his arguments to the trial court during the habeas hearing); *Ex parte Torres*, 941 S.W.2d 219, 220 (Tex. App.—Corpus Christi 1996, pet. ref'd) (concluding that appellant waived basis for claim of double jeopardy by failing to include it in his application for writ of habeas corpus); *see also Ex parte Saldana*, Nos. 13-01-360-CR, 13-01-361-CR, 2002 WL 91331, *5 (Tex. App.—Corpus Christi Jan. 24, 2002, no pet.) (not designated for publication) (finding that appellant failed to preserve his argument that his bond was improperly increased under article 17.09 because appellant failed to include such argument in his application for writ of habeas corpus). We, therefore, do not address the merits of these arguments on appeal.

In his second issue, Berry argues that the trial court should not have considered the telephone conversation containing the alleged threat in determining whether to increase bail because the State allegedly possessed a police report and

an audio recording containing information regarding the alleged threat when the first habeas hearing took place, but failed to disclose this information to the trial court at that time. Berry claims that the State instead chose to bring the telephone conversation to the trial court's attention only after Berry had posted the original two $150,000 bonds. Berry argues that "[a]llowing the State to present information it possessed but failed to disclose until after a bond hearing or, as in this case, after [a]ppellant incurs enormous costs in posting the bond," is oppressive and would encourage the State to engage in those tactics in the future.

The record before us does not definitively indicate when the State came into possession of any police report, audio recording, or other evidence of the telephone conversation containing the alleged threat made by Berry.[1] However, during the second habeas hearing, the prosecutor informed the trial court that regardless of

---

[1] During the second habeas hearing, Berry's counsel argued that a police report containing information regarding the telephone conversation was filed on September 17 or September 19. He then stated, "I'd like to make sure that that's part of the record[,] that that's a fact." The trial judge responded, "[t]hat will be reflected in the record." However, "[c]ounsel who want 'the record to reflect' certain facts must include those facts in the record as evidence either by sworn testimony, exhibits, stipulations, admissions or judicial notice." *Shields v. State*, 820 S.W.2d 831, 833 (Tex. App.—Waco 1991, no pet.). Berry did not present any testimony, exhibits, stipulations, or admissions establishing the date that the State first came into possession of the information regarding the telephone conversation. In addition, although Berry's counsel asked the trial court to take judicial notice of the fact that the State possessed an audio recording of the telephone conversation at the time of the original bond hearing, the record does not reflect that the trial court agreed to do so.

9

when the State first received information regarding the alleged threat, the prosecutor filed the State's motion to increase bond as soon as he personally became aware of this information:

> [THE STATE]: And, Your Honor, regardless of when the State came in possession of these phone calls, it was made -- as soon as it was brought to my attention that there was a threat made by Mr. Berry to the complaining witnesses, that's when I acted. I felt that it was important that the Court know that these statements were made. All cases are different in reference to [defense counsel] comparing this bond compared to other crimes. All crimes are different, and the facts are different on this case because there was a threat made to the complaining witnesses in this case. I acted upon that as soon as I became aware of it and I brought that to the Court's attention. I do think it is pertinent to how these bonds should be set in order to protect the complaining witnesses in this case.

Berry presented no evidence to contradict the prosecutor's statements, and the record before us contains no evidence to suggest that the State intentionally withheld information from the trial court at the original bail hearing or that the State, with the intent to keep Berry incarcerated, waited to inform the trial court of the alleged threats against the complaining witnesses until after Berry had posted the original appearance bonds.

Article 17.15(5) of the Texas Code of Criminal Procedure requires the trial court to consider the future safety of the victim of an alleged offense in setting a defendant's bail. Tex. Code Crim. Proc. Ann. art. 17.15(5) (West 2015). In addition, article 56.02 gives the victim of an offense "the right to have the

10

magistrate take the safety of the victim or his family into consideration as an element in fixing the amount of bail for the accused[.]" *Id*. art. 56.02(a)(2) (West Supp. 2014). In light of the trial court's statutory duty to consider the safety of the victims, the trial court's broad discretion in setting bail, the absence of any evidence that the State withheld information intentionally or for the purpose of keeping Berry incarcerated, and the absence of any relevant case law cited by Berry to support his argument, we find that the trial court did not abuse its discretion by considering the alleged threat, even though the trial court received this information after the initial bond hearing and after Berry posted his original bonds. *See id*. art. 17.09, § 3 (providing that the trial court may require the accused to give another bond "whenever, during the course of the action, the judge . . . finds that the bond is . . . insufficient in amount . . . or for any other good and sufficient cause"); *Meador v. State*, 780 S.W.2d 836, 836-37 (Tex. App.—Houston [14th Dist.] 1989, no pet.) (finding, in the context of a bond increase under article 17.09, that the trial court "has great latitude and discretion when setting bond for a person accused of committing a crime"). We overrule Berry's second issue.

### III. Denial of Request to Reduce Bail

In his first issue, Berry argues that the $500,000 appearance bond in each case is excessive and violates his rights under the Eighth and Fourteenth

Amendments of the United States Constitution; article I, sections 11, 13, and 19 of the Texas Constitution; and articles 1.09 and 17.15 of the Texas Code of Criminal Procedure. We review a trial court's decision in setting bail for an abuse of discretion. *See Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. [Panel Op.] 1981). The trial court's ruling will not be disturbed if it is within the zone of reasonable disagreement. *Wood*, 308 S.W.3d at 552. In reviewing the trial court's decision, we view the evidence in the light most favorable to the trial court's ruling. *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007).

The primary purpose of an appearance bond is to secure the presence of a defendant in court for trial of the offense charged. *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977). "Bail should not be set so high as to be oppressive, *guaranteeing* the defendant's appearance, but should be high enough to provide *reasonable assurance* the defendant will appear at trial." *Ex parte Henson*, 131 S.W.3d 645, 647 (Tex. App.—Texarkana 2004, no pet.); *see also Ex parte Ivey*, 594 S.W.2d 98, 99 (Tex. Crim. App. [Panel Op.] 1980). In setting bail, the trial court must strike a balance between the defendant's presumption of innocence

12

and the State's interest in assuring the defendant's appearance at trial. *Ex parte Beard,* 92 S.W.3d 566, 573 (Tex. App.—Austin 2002, pet. ref'd).

Both the United States and Texas Constitutions prohibit excessive bail. *See* U.S. CONST. amends. VIII, XIV; Tex. Const. art. I, §§ 11, 13. Bail is excessive if it is "set in an amount greater than [what] is reasonably necessary to satisfy the government's legitimate interests." *Beard,* 92 S.W.3d at 573. Article 17.15 of the Texas Code of Criminal Procedure provides rules for the court to follow in setting bail. *See* Tex. Code Crim. Proc. Ann. art. 17.15. Article 17.15 provides:

> The amount of bail to be required in any case is to be regulated by the court, judge, magistrate or officer taking the bail; they are to be governed in the exercise of this discretion by the Constitution and by the following rules:
>
> 1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.
>
> 2. The power to require bail is not to be so used as to make it an instrument of oppression.
>
> 3. The nature of the offense and the circumstances under which it was committed are to be considered.
>
> 4. The ability to make bail is to be regarded, and proof may be taken upon this point.
>
> 5. The future safety of a victim of the alleged offense and the community shall be considered.

*Id*. Other factors and circumstances that the trial court may consider in determining the amount of bail include: (1) the defendant's work record; (2) the defendant's family and community ties; (3) the defendant's length of residency; (4) the defendant's prior criminal record; (5) the defendant's conformity with previous bond conditions; (6) the existence of outstanding bonds, if any; and (7) aggravating circumstances alleged to have been involved in the charged offense. *See Rubac*, 611 S.W.2d at 849-50; *Wood*, 308 S.W.3d at 552. The burden of proof is on the defendant to prove that bail is excessive. *Rubac*, 611 S.W.2d at 849.

## A.    Nature and Circumstances of the Alleged Offense

We first consider the nature of the alleged offenses and the circumstances of their commission. *See* Tex. Code Crim. Proc. Ann. art. 17.15(3).  In considering this factor, it is proper to consider the potential punishment for the offense that is permitted by law. *Ex parte Hunt*, 138 S.W.3d 503, 506 (Tex. App.—Fort Worth 2004, pet ref'd). Berry has been charged in two cases with aggravated robbery, a first-degree felony. *See* Tex. Penal Code Ann. § 29.03(a)(1), (b) (West 2011). The punishment range for a first-degree felony is imprisonment for five to ninety-nine years or life, and a fine of up to $10,000. *Id*. § 12.32. To the extent the two aggravated robbery offenses arise from the same criminal episode, which the record seems to suggest, Berry may be sentenced to concurrent, rather than

consecutive, sentences if he is convicted of both offenses. *See id*. § 3.03(a) (West Supp. 2014). Nevertheless, Berry faces a potentially lengthy prison sentence if he is convicted of one or both charges. *See id*. § 12.32. Further, the indictments allege that Berry, while in the course of committing theft of property belonging to the complainants, and with the intent to obtain and maintain control over the property, intentionally and knowingly caused serious bodily injury to the complainants by hitting them with his hand and kicking them with his foot. "'Serious bodily injury'" is defined by the Penal Code as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Tex. Penal Code Ann. § 1.07(a)(46) (West Supp. 2014). Thus, the indictments, on their face, indicate that the crimes with which Berry is charged are both serious and violent in nature. Therefore, the trial court could have reasonably concluded that this factor weighs in favor of a high bail.

## B. Sufficient Bail to Assure Appearance

We next consider whether bail is sufficiently high to give a reasonable assurance of appearance at trial. *See* Tex. Code Crim. Proc. Ann. art. 17.15(1). A defendant's ties to the community and work history are relevant to whether the amount of bail is adequate to give reasonable assurance that the defendant will

appear. *See Ex parte Tata*, 358 S.W.3d 392, 400 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd). A defendant's compliance with the conditions of any prior bonds also bears on this issue. *Ex parte Davis*, 147 S.W.3d 546, 548 (Tex. App.—Waco 2004, no pet.).

During the second habeas hearing, Berry presented evidence that he complied with the requirements of the two $150,000 bonds while released on bail. Specifically, Berry's bail bondsman testified that he imposed several reporting requirements on Berry, including requirements that Berry check in with the bondsman twice per week, that Berry report any changes in his address, phone number, or employment, and that Berry notify the bondsman if he was rearrested or subsequently incarcerated. The bondsman testified that during the time period that Berry was released on bond, Berry complied with each of these requirements. Because Berry's bonds were set high, the bonding company independently required Berry to wear an electronic ankle monitor while he was released on bond. The bondsman testified that Berry's ankle monitor was programmed to alert the monitoring facility if Berry came within ten miles of the complaining witnesses' residence and that, to his knowledge, Berry did not personally violate the ten-mile restriction while he was released on bond. The bondsman also testified that Berry

16

voluntarily appeared in court for his second habeas hearing despite knowing that a warrant for his arrest had been issued based on his increased bonds.

Other evidence from the habeas hearings, however, establishes that Berry is not a resident of this jurisdiction. He resides in Little Rock, Arkansas. Most of Berry's family members, including his fiancé, his daughter, and his daughter's family, also live in Arkansas. Berry has no discernable ties to Texas other than one brother who lives in Port Arthur, Texas. The record also reflects that Berry was in Louisiana at the time he was arrested for the alleged offenses.

With respect to his work history, the record indicates that Berry worked in Arkansas as the manager of his powder coating business immediately before his arrest. Berry, however, presented no evidence that he operated or worked for that business for any meaningful amount of time or that he intended to return to that job if released on bail. The only other evidence that Berry presented with respect to his work history was that he served in the United States Air Force and was honorably discharged in 1983 and that he worked for his brother building homes in Texas for a brief period in 1986. Berry, however, presented no evidence of any recent work history that would establish an additional tie to Jefferson County or to Texas in general.

Given that Berry does not reside in this jurisdiction, has few ties to the community, and was located out of state at the time he was arrested for the charged offenses, and given the scant evidence in the record of a stable work history or any meaningful employment ties to Texas, the trial court could have reasonably concluded that Berry presents a risk of flight, particularly given that he faces a potential life sentence if convicted of one or both of the charged offenses. Further, although Berry presented evidence regarding his compliance with the requirements of his two $150,000 bonds during his release on bond, the record reflects that at the time the trial court denied Berry's requested relief, Berry had been released on bond for less than thirty days. In evaluating Berry's compliance with the bonds, the trial court could have reasonably taken into account the relatively brief duration of this period of compliance in deciding the weight to be given to this evidence. *See Esquivel v. State*, 922 S.W.2d 601, 604 (Tex. App.—San Antonio 1996, no pet.) (noting that the trial court, as the trier of fact, is responsible for assessing the weight to be given to the evidence in a bail reduction hearing). Viewing the evidence in the light most favorable to the trial court's ruling, the trial court could have reasonably concluded that this factor weighs in favor of a high bail.

## C. Instrument of Oppression

Bail may not be used as an instrument of oppression. Tex. Code Crim. Proc. Ann. art. 17.15(2); *see Ivey*, 594 S.W.2d at 99. Bail has been held to be oppressive when the trial court sets bail at an amount "for the express purpose of forcing appellant to remain incarcerated" pending trial or appeal. *See Ex parte Harris*, 733 S.W.2d 712, 714 (Tex. App.—Austin 1987, no pet.). Here, the record contains no indication that the trial court set the current bail amounts for the sole purpose of ensuring that Berry remains incarcerated pending trial. *See Montalvo v. State*, 315 S.W.3d 588, 596 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("Our independent review of the habeas corpus record likewise does not suggest that the trial court deliberately set bail at an excessively high level solely to prevent Montalvo from posting bail.").

## D. Ability to Make Bail

The trial court is also required to consider the defendant's ability to make bail. *See* Tex. Code Crim. Proc. Ann. art. 17.15(4). To show that he is unable to make bail, a defendant generally must show that his funds and the funds of his family have been exhausted. *Ex parte Castellanos*, 420 S.W.3d 878, 883 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Unless the defendant can make this showing, a defendant usually must show that he made an unsuccessful effort to

19

furnish bail before bail can be determined to be excessive. *Milner v. State*, 263 S.W.3d 146, 149 (Tex. App.—Houston [1st Dist.] 2006, no pet.). However, if both the defendant and his family indicate a financial inability to procure a bond, the court will not require the defendant "'to do a useless thing.'" *Id*. at 149-50 (quoting *Ex parte Dueitt*, 529 S.W.2d 531, 532 (Tex. Crim. App. 1975)).

Berry presented no evidence regarding how much he regularly earns from his powder coating business, whether that business has any assets, or how much that business is worth. There is also no evidence in the record regarding Berry's personal financial resources, including whether he has any other sources of income, whether he has any bank accounts, whether he owns any real estate or other assets, or whether he owes any debt.

At the second habeas hearing, Berry presented testimony from his bail bondsman that he paid the bondsman $10,000 as a down payment for his original two $150,000 bonds. Berry, however, presented no evidence regarding whether that payment exhausted Berry's funds or the funds of his family members or whether Berry can pay or borrow any additional amounts.[2] There is also no

_____

[2] In his applications for writ of habeas corpus, Berry alleged that the $10,000 that he paid to his bondsman to secure his initial two $150,000 bonds "represents more than [d]efendant's available assets and includes indebtedness to other persons or family members who loaned money to [d]efendant to secure his release." Berry also alleged that as a result of paying the $10,000 to his bondsman, he "has

20

evidence in the record to indicate the premium Berry might have to pay to obtain

two $500,000 bonds to meet the current bail amount set by the trial court, and there

is no evidence showing what efforts, if any, Berry or his family has made to obtain

two $500,000 bonds.

Berry's brother testified at the first habeas hearing that he would be willing

"to put up some of the money" and "some property" if the trial court set bail for the

charged offenses. The record, however, contains no evidence of how much money

his brother was able or willing to contribute or the value of the property he was

willing to provide as collateral for a bond. There is also no evidence regarding

whether his brother did, in fact, provide any money or property to secure Berry's

initial two $150,000 bonds or whether any portion of those funds or the property is

still available to secure a bond in a higher amount. Similarly, although Berry's

fiancé testified at the initial habeas hearing that she would try to make a bond for

Berry, she provided no details regarding how much money she was able or willing

to contribute to secure Berry's bond, and there is no evidence regarding whether

virtually no assets available to pay his attorney's fees, investigator's fees, and other legal fees related to the preparation of his defense." Berry, however, presented no evidence to support these allegations. An application for writ of habeas corpus, although sworn, "is but a pleading and does not prove itself." *Ex parte Wells*, 332 S.W.2d 565, 565 (Tex. Crim. App. 1960); *see also Ex parte Taylor*, 690 S.W.2d 33, 34 (Tex. App.—Beaumont 1985, no pet.).

she contributed any funds to the $10,000 payment made by Berry to secure his initial two $150,000 bonds or whether she has any additional funds to contribute.

In short, the evidence shows that Berry has expended $10,000 since the first habeas hearing to secure his initial appearance bonds. Berry, however, failed to present any evidence regarding how, if at all, that payment impacted his ability to make the higher bail now set by the trial court. Berry presented limited testimony regarding his and his family's current financial resources, and he presented no evidence regarding what efforts, if any, he has made to furnish bail or whether his funds or the funds of his family have been exhausted. We conclude, therefore, that Berry did not carry his burden to show that he is unable to make the current bonds and that the trial court could have reasonably concluded that this factor does not support a reduction in bail. *See Castellanos*, 420 S.W.3d at 883; *Milner*, 263 S.W.3d at 149.

E.  **Future Safety of the Victims and the Community**

The future safety of both the community and the victims of the alleged offenses must be considered by the trial court in determining the appropriate amount of bail. Tex. Code Crim. Proc. Ann. art. 17.15(5). Given the seriousness of the offenses with which Berry has been charged, as well as the alleged acts of violence that they involved, the trial court could have reasonably concluded that

Berry presents a risk to the safety of the community. *See Milner*, 263 S.W.3d at 151(considering the gravity and nature of the charged offense in determining whether appellant presented a risk to the safety of the community).

Further, as noted, the State filed a motion to increase bond, asserting as its sole basis for the increase that Berry, while in custody for the charged offenses, made a threat against the complaining witnesses during a telephone conversation with a third party. The State claimed that Berry's actions "compromise[d] the future safety of the community and the victim[s]" and warranted an increase in bail. The record indicates that the trial court was persuaded by the State's argument in this respect and, finding that Berry made a threat against the complaining witnesses, increased bail to $500,000 per case.

Thereafter, Berry filed his second application for writ of habeas corpus, challenging the higher bond amounts. As the habeas applicant seeking a reduction in bail, the burden was on Berry to prove that his bail was excessive in light of the considerations set forth in article 17.15, including those outlined in article 17.15(5). *See Rubac*, 611 S.W.2d at 849; *see generally* Tex. Code Crim. Proc. Ann. art. 17.15. In this respect, Berry presented evidence that while released on bond, he wore an electronic ankle monitor as a requirement of his bonds, that the monitor was programmed to alert the monitoring facility if Berry came within ten

23

miles of the victims' residence, and that he did not violate the ten-mile restriction while he was released on bond. Berry, however, presented no evidence to refute the trial court's prior finding that he had threatened the complaining witnesses while in custody for the charged offenses. Thus, he did not present any evidence to refute the primary basis for the trial court's decision to increase his bail. In light of the trial court's prior finding that Berry threatened the complaining witnesses, as well as Berry's failure to present evidence to refute that finding, the trial court could have reasonably concluded that Berry's evidence of compliance with his bond conditions was insufficient to establish that he did not pose a danger to the victims in this case and that a higher bail was necessary to ensure the victims' future safety. The trial court, therefore, could have reasonably concluded that this factor supported a higher bail.

## F.   Other Factors

In determining what constitutes reasonable bail, the trial court is also permitted to consider the defendant's criminal history and other outstanding bonds. *See Rubac*, 611 S.W.2d at 849. Berry's counsel informed the trial court that Berry has one prior conviction for misdemeanor theft in Arkansas. The State corroborated this statement, confirming that its records for Berry showed a prior arrest for theft of property. No evidence was presented of any outstanding bonds.

24

Berry also relies on certain data he obtained from the Jefferson County District Clerk's office to argue that his bonds are excessive when compared to bonds set in other first-degree felony cases in Jefferson County. In support of this argument, Berry relies on a computer printout from the Jefferson County District Clerk's office, which lists, by docket number and charged offense, the bond amounts set in each capital murder, attempted capital murder, murder, and aggravated robbery case pending in Jefferson County as of late October or early November 2014. However, we note that aside from the docket number, the charged offense, and the amount of bail set, the printout contains no information regarding any of the cases listed. As such, we do not know if any of the cases identified in the printout involve facts or circumstances that are similar, in light of the factors set forth in article 17.15, to those in the present case. Therefore, we find the printout on which Berry relies to be of relatively little value in determining the appropriateness of the bonds set in his two cases.

## G. Conclusion

The record reflects that the trial court weighed each of the relevant factors in determining the appropriate amount of bail in these two cases. Given Berry's residence out of state, his few ties to Texas, the scant evidence regarding his work history, and the fact that he was apprehended for the charged offenses out of state,

the trial court could have reasonably concluded that Berry poses a risk of flight. Further, given the serious and violent nature of the offenses with which Berry is charged, the potentially lengthy prison sentence he could face if convicted, the lack of evidence regarding Berry's inability to pay the bonds as currently set by the trial court, and the trial court's concerns regarding the future safety of the victims and the community, we find that the trial court could have reasonably concluded that the $500,000 bond in each case was justified. We conclude that the trial court did not abuse its discretion in denying Berry's request for a reduction in bail. We overrule Berry's first issue and affirm the judgment of the trial court.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on February 18, 2015
Opinion Delivered August 12, 2015
Do not publish

Before McKeithen, C.J., Kreger and Horton, JJ.